ALICE HUNTINGTON, Respondent, *v.* EMELINE ASHER, Appellant.

The right to profits *a prendre*, although capable of being transferred in gross, may also be attached by the owner of the land to other land as an appurtenance, and pass as such upon conveyance by him of the latter.

In 1869, H., being the owner of certain lands, upon which was a mill-pond, conveyed to A. half an acre adjoining the mill-pond, "with the appurtenances." The deed contained a clause following the description of the land conveyed, whereby, "as an incident to this conveyance," the grantor conveyed to the grantee, "his heirs and assigns, the exclusive right to take ice from the pond * * *. with the right and privilege of access for that purpose to and from the pond to the ice-house to be erected on the lot hereby conveyed." The grantee covenanted, "for himself, and his heirs and assigns," to furnish to the grantor, as long as he occupied his then residence, all the ice he required for family use, and to furnish to the purchaser or purchasers of the pond and mill privilege all the ice required for their family use. The land conveyed was purchased by A. for the declared purpose of erecting thereon an ice-house, to store ice from the pond, and as a means of conducting the ice business, A. built the ice-house, and carried on the ice business as contemplated. *Held,* that the right thus given was a natural, appropriate and necessary adjunct of the land conveyed, and when exercised, became an appurtenance

Statement of case.

thereto in the nature of an easement, and passed with the land to defendant, the grantee of A., under a conveyance of the land with the appurtenances.

*Ackroyd* v. *Smith* (10 C. B. 164), distinguished.

Also *held*, that, conceding H. and his successors in title were not bound to maintain the dam to the pond, they were not authorized to destroy it, or to prevent its necessary repair; that the grant carried with it, and gave to the owner of the dominant estate, the right to repair and rebuild the dam.

In 1872, one of the grantees of H. destroyed the dam and no ice was taken from the pond until 1877. In that year defendant, a lessee of the ice-house lot, having obtained consent of plaintiff, who owned the land formerly covered by the pond, built a temporary dam, and cut ice during the winter; this dam was removed in the spring. In 1878, plaintiff having refused to give permission without compensation, defendant, who had acquired title to the ice-house lot, entered upon plaintiff's land, erected a dam and cut ice from the pond. In an action to restrain further entry, and for damages, *held*, that by asking permission, defendant did not admit the termination of his right to take ice on the destruction of the dam in 1872.

*Huntington* v. *Asher* (26 Hun, 496), reversed.

(Argued June 25, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made at the February term, 1882, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 26 Hun, 496.)

This action was brought to restrain defendant from entering upon plaintiff's lands, and erecting or repairing a dam thereon, and to recover damages for alleged trespass.

The facts as found by the court are substantially as follows:

On the 3d day of November, 1869, one James Hogan was the owner in fee of the lands now of the plaintiff and defendant. Upon the lands now of the plaintiff there was then, and for many years before there had been, a pond which overflowed about seventeen acres of land. Hogan had a mill upon the land, but said mill had been destroyed. On said 3d day of November, 1869, the said Hogan conveyed to one J. Howard Asher the parcel of land now of the defendant, that is a half-acre adjoining the pond; the deed, after a description of the said parcel, contained this provision:

"And the party of the first part, as incident to this convey-
ance, also grants and conveys to the party of the second part,
his heirs and assigns, the exclusive right to take ice from the
pond of the party of the first part, with the right and privilege
of access for that purpose to and from the pond to the ice-house
to be erected on the lot hereby conveyed.

" In consideration of which said grant, as aforesaid, the party
of the second part hereby covenants and agrees for himself and
his heirs and assigns to furnish and deliver to the party of the
first part (so long as he shall continue to occupy his present
residence), free of charge, all the ice which he shall require for
his own family use, and also to furnish and deliver to the pur-
chaser or purchasers of the pond and mill privilege and their
heirs and assigns, free of charge, all the ice which they shall
require for their own family use, so long as they continue to
reside in the village of Rhinebeck."

The grantee erected an ice-house on the lot so conveyed and
took ice from said pond in the winter of 1869–1870, and of
1870–1871, and stored the same in the ice-house. In February,
1870, Hogan conveyed the lands now of plaintiff to one Wil-
liam Kelly, the deed containing this recital:

" This conveyance, however, is subject to the right hereto-
fore conveyed to J. Howard Asher of taking ice from the pond,
as contained in his deed of November 3, 1869."

Kelly conveyed to Marie E. Ford, the conveyance contain-
ing the same recital. Ford in said January, 1875, conveyed
to plaintiff the deed containing said recital. While Ford
was the owner, and about the year 1872, the dam was torn
down by her, and thereafter, while she owned the premi-
ses, and at the time of the conveyance to plaintiff, there
was no pond maintained, the stream flowing in its natural
course and banks. No ice was taken from said premises from
the winter of 1870–1871 until the winter of 1877–78. In the
fall of 1877 the defendant was the lessee from J. Howard
Asher of the premises now of the defendant, and having applied
to and obtained plaintiff's consent, she built a temporary dam,

and cut and removed ice from such pond, taking away the dam in the spring of 1878.

In February, 1878, the said J. Howard Asher conveyed the premises to defendant, with the appurtenances, but making no mention of ice or ice privilege. In the fall of 1879 plaintiff notified defendant that she claimed that defendant had no right to enter and pond upon her land and cut ice therefrom, but that she could have the privilege of that year for the sum of $150 and supplying plaintiff's family with ice during the season, or $200 without supplying such ice. Defendant did not agree to the terms, but claimed the ice as her right under the deed, and thereafter entered upon the land, erected a dam upon plaintiff's land, and in the winter cut and removed large quantities of ice therefrom; she supplied plaintiff's family with ice during the season.

Further facts appear in the opinion.

*Henry M. Taylor* for appellant. Where the owner of land has by any artificial arrangement effected an advantage for one portion to the burdening of the other, upon the severance of the ownership, the holder of the two portions takes them respectively, charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance of the portion first granted. (*Lampman* v. *Mills*, 21 N. Y. 505–511; *Roberts* v. *Roberts*, 55 id. 275; *Curtiss* v. *Ayrault*, 47 id. 73; *Simmons* v. *Cloonan*, 81 id. 557.) The incidents which pass as appurtenances must be open and visible, and when so, knowledge will be inferred. (*Simmons* v. *Cloonan*, 81 N. Y. 557, 565.) The terms of the deed from Hogan made the right to the pond incident or appurtenant to the lot granted Asher. (Bouv. Law Dict. 1, 617; 81 N. Y. 557; 4 Kent, 468; *U. S.* v. *Appleton*, 1 Sumn. 492; *Pomfret* v. *Receipt*, 1 Saund. 391; *Langdon* v. *Mayor*, etc., 93 N. Y. 151.) The right in Asher in the pond premises was an easement attached to his lot, a servitude charged on the pond premises. (*Lampman* v. *Mills*, 21 N. Y. 597; *Jamieson* v. *Milleman*, 3 Duer, 255.) The right to the ice and consequently to the maintenance of the

pond so far as necessary for ice being attached to Asher's lot as an easement and appurtenance, it passed also to the defendant by her deed from Asher. (81 N. Y. 557.) If Hogan and his grantees had not the right to destroy the dam and pond, then it was the legal right of defendant to enter the premises and restore the dam, if injured, so far as needed for ice purposes. (Washburn on Easements, 422, 566 ; *Roberts* v. *Roberts*, 55 N. Y. 275 ; *McMillen* v. *Cronin*, 13 Hun, 68.) The finding of fact, " that it was not the intention of the parties to the deed from Hogan to Asher that Hogan and his successors to the title should be bound perpetually to keep up the dam," is rather a conclusion of law than of fact ; at least it is a question both of law and of fact. (*Simmons* v. *Cloonan*, 81 N. Y. 564.)

*O. D. M. Baker* for respondent. The provision in the deed from Hogan to Asher was not a conveyance of any interest or estate in the retained land, but was a naked license " to take ice from the pond " then there. (1 Wash. on R. P. [3d ed.] 542.) The appellant's rights are measured by the express language of the instrument under which she claims. (1 Edm. Stat. 689, § 140 ; *Sheets* v. *Selden*, 7 Wall. 423.) When " the pond " ceased to exist in 1872 the right to take ice was terminated. (1 Wash. on R. P. 545 ; *Trustees, etc.*, v. *Brett*, 25 Ind. 410 ; *Morse* v. *Maddox*, 17 Mo. 579 ; *Ballard* v. *Butler*, 30 Me. 94 ; *French* v. *Tapen*, 105 U. S. 509–523.) A reservation in favor of one not a party to the deed is void. (*Ives* v. *Van Auken*, 34 Barb. 566.) Defendant has nothing to sustain her claim of right to enter in any event. (*Spencer's Case*, 1 Smith's Lead. Cas. 165.)

FINCH, J. The contract of purchase and sale between the original parties contemplated the creation of a right to take ice from the unsold lands of the grantor as an incident to the conveyance of the half acre and an appurtenance of the land conveyed. It is impossible to study the arrangement in its details and arrive at a different conclusion. The half acre of land was purchased for the known and declared purpose of erecting thereon an ice-house to store the product of the pond, and as a

means of conducting the ice business. The terms of the deed substantially so declare, and the fact is not denied by the findings of the trial court. The right thus given was a natural, appropriate, and necessary adjunct of the land conveyed, having in view the purpose for which it was purchased, on the one hand, and sold, on the other. There was no sale of the right in gross for its own sole and separate consideration, but the price of the land paid and to be paid covered the land with its right attached. The arrangement was meant to be continuous, and to follow the two estates irrespective of their ownership. The conveyance of the right, like that of the land, was to the grantee and his assigns, and the former was declared in terms to pass as "incident" to the grant of the latter. And then the grantee, "for himself, his heirs and assigns," covenants to furnish ice to the successive grantees of the pond and mill privilege so long as they reside in the town of Rhinebeck. The contract thus contemplated a dominant and servient estate. If a mill, dependent upon water-power, had stood upon the half acre, the right to draw from the pond would have passed with the land as an appurtenant easement, if such had been the actual situation of the premises, or the express agreement of the parties. If no mill and no raceway were there, but the purchase was for the purpose of erecting them, and the deed gave the water-right accordingly and as incident to the conveyance, such right would become an appurtenance, at least when exercised, and pass with the land. But the right in question here is of a somewhat different character, and upon that difference is founded the conclusion of the General Term, and much of the argument before us.

The opinion below asserts that the right under consideration was not an easement attached to a dominant estate, and not an appurtenance of the latter. The reason assigned is in these words: "A right by which one person is entitled to remove and appropriate for his own use any thing growing in, or attached to, or subsisting upon the land of another for the purpose of the profit to be gained from the property thereby acquired in the thing removed, has always been considered in

law a different species of right from an easement. Such right is a privilege, and so is an easement; but the latter is a privilege without profit, and is merely accessorial to the rights of property in land, while the former is the reverse. If granted to one in gross it is so far of the character of an estate or interest in the land itself that it is treated as such." Authority is then cited for the doctrine. (Per Chancellor WALWORTH, *Post* v. *Pearsall*, 22 Wend. 425; Godd. on Easements, 5 *et seq.;* 2 Washburn, 11 *et seq.*, 312, 521. 528.) And the learned General Term add that "an easement proper in gross cannot be created by grant so as to be assignable or inheritable." (*Ackroyd* v. *Smith*, 10 C. B. 164.)

It must be admitted that the strict and technical definition of an easement excludes a right to the products or proceeds of land, or, as they are generally termed, profits *a prendre*. But that such a right is in the nature of an easement, and although capable of being transferred in gross, may also be attached to land as an appurtenance and pass as such, is shown by the authorities to which the General Term refer. In *Post* v. *Pearsall* (*supra*) the language of the chancellor is, "for a profit *a pendre* in the land of another, when not granted in favor of some dominant tenement, cannot properly be said to be an easement, but an interest or estate in the land itself." That it may be so granted by the terms of the grant as to become an appurtenant right in the nature of an easement is implied in the citation. Washburn, to whose discussion of the subject we are referred, says distinctly, "this right of profit *a prendre*, if enjoyed by reason of holding a certain other estate, is regarded in the light of an easement appurtenant to such estate;" (Wash. on Eas. 8, § 7); and alluding also to rights acquired by custom or dedication, the author adds: "it would be difficult to treat of easements or servitudes, without embracing these rights, as well as that of taking profits in another's land which one may enjoy in connection with the occupancy of the estate to which such right is united." It seems, therefore, to be the law, that a right to take a profit from another's land, although capable of being transferred in gross, may also be so attached

to a dominant estate as to pass with it by a grant transferring the land with its appurtenances.

The case of *Ackroyd* v. *Smith* (10 C. B. 164) does not controvert this doctrine, but rather limits and restricts it. There the controversy arose over a grant of way to the premises conveyed " for all purposes," and the question came up whether a conveyance of the alleged dominant estate carried this right to the purchaser, and it was ruled that it did not. The court said : " If the right conferred by the deed set out was only to use the road in question for purposes connected with the occupation and enjoyment of the land conveyed, it does not justify the acts confessed by the plea. But if the grant was more ample, and extended to using the road for purposes unconnected with the enjoyment of the land,— and this, we think, is the true construction of it,— it becomes necessary to decide whether the assignee of the land and appurtenances would be entitled to it." The court thereupon ruled that " it is not in the power of a vendor to create any rights not connected with the use or enjoyment of the land, and annex them to it, and held that such right must " inhere in the land;" " must concern the demised premises and the mode of occupying them ; " " must be *quodammodo* annexed and appurtenant to them ;" " must both concern the thing demised and tend to support it, and support the reversioner's estate." That the right claimed in the present case is within the boundary assigned seems to us quite certain. It respected the use and occupation of the half acre ; was necessary and essential to that use; and directly concerned the mode of occupying the land as contemplated both by vendor and vendee. An instructive case on this point is that of *Grubb* v. *Guilford* (4 Watts, 223). There, on sale of twenty acres of ore-bank, a right was also given to the grantee to enter upon other lands of the grantor and search for iron ore, and mine and carry it away. The question was whether such right was appurtenant to the twenty acres, and it was held that it was not. Among the reasons given were that a separate consideration for the ore mined was to be given, and that the right was in no manner necessary to the use or occu-

pation of the twenty acres, and did not concern or affect it at all. The furnace to be supplied was on other lands, and the court said that the argument tended only to show that the right was appurtenant to the furnace, and not to the twenty acres, because while it was needed for the one, it was not for the other, and in no manner concerned it.

The answer made by the respondent to this view of the case is threefold. Her counsel argue that the right in question was a mere license, and passed no estate in the land. But a license is revocable and disappears upon a conveyance, binding in no respect the new grantee, and the vendor did not so understand the right he had given, for when he conveyed he did so " subject to the right heretofore conveyed to J. Howard Asher, of taking ice from the pond ",— a provision meaningless and unnecessary if referred to a license revocable at any moment. The grantee had no such intent or understanding, for he went on at once to construct his ice-house, and organize his business at an expense which must have been serious and considerable, and which he would not have done had he known that he held but a mere license which his grantor could at will revoke. ( *Wetmore* v. *White*, 2 Caine's Cas. 87 ; *Wiseman* v. *Lucksinger*, 84 N. Y. 39, 40.) And if the deed to Asher did not pass an interest in the grantor's land covered by the pond, it passed nothing, for it did not transfer any ice. There was none at the time to be transferred, and when it formed, Asher had no title to the whole or any specific part of it. He had simply a right to acquire such title to so much as would fill his ice-house on the half acre, by going upon the premises, and cutting and taking that quantity. The case of *Doe* v. *Wood* (2 B. & Ald. 724) illustrates the distinction. In that case the grant was of a right to search for metals in the grantor's land, and to raise and dispose of the same when found. It was held to be not a specific grant of the metals in the land, but a right of property only as to such part thereof as, under the liberties granted, should be dug and got, and that such right was an incorporeal privilege. And in *Grubb* v. *Guilford* (*supra*) it was expressly ruled that the right to raise ore was an incorporeal heredita-

ment and not, as had been contended, a license revocable at the will of the parties.

Then it is further said that the grantor and those succeeding him were not bound to maintain the dam, and when the pond was destroyed the right was gone. It may be that they were not bound to maintain it, but that fact did not authorize them to destroy it or prevent its necessary repair. To assert that, is at once to convert the easement into a mere license, revocable at any moment. The grant of the easement carried with it whatever was essential to its enjoyment, and gave to the owner of the dominant estate the right to repair and rebuild the dam. (Washb. on Easements, 39, 565; *Roberts* v. *Roberts*, 55 N. Y. 275.).

After the original conveyance to Asher, the defendant became a lessee of the lot. Before that, her lessor had built the ice-house and taken ice from the pond with which to fill it, and so exercised his right and made it parcel of his estate. In 1872 one of Hogan's grantees had destroyed the dam, and no ice was taken until 1877. In the fall of that year, the defendant, being lessee, applied to and obtained plaintiff's consent to build a temporary dam and cut the ice, which was done; the dam being removed in the spring of the next year. The defendant afterward became owner by a deed from Asher. Upon these facts it is argued that the defendant admitted that the right to take ice had ended in 1872. It would be quite as just an inference that plaintiff admitted a right to replace the dam. She does not appear to have denied such right until the next year.

The whole question, thus, turns upon the inquiry whether the privilege granted was of such a character as to be in the nature of an easement and become, when exercised, an appurtenance. It does not concern or inhere in the land precisely like a right of way which is essential or convenient irrespective of the use to which the land is put, but does do so relatively to that use, as in the case of land used for a mill or for the manufacture of iron. In those cases, as in this, the use for which the land was bought, and which characterized the con-

tract of purchase, became the essential element by which the privilege granted was to be measured and judged. The right to take ice from the pond was the one essential thing leading to the purchase of the half acre, justifying the building put upon it, and making possible the performance of the covenants for supply. We think that right passed to the present defendant.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.