VAN RENSSELAER *et al. v.* MOUL.

(*Supreme Court, General Term, Third Department.* February, 1888.)

1. TRESPASS—ON LAND—CUTTING ICE—MEASURE OF DAMAGES.
   In an action for damages for a wrongfully entering upon plaintiff's lands, and cutting and removing ice therefrom, plaintiff can recover only for the injury occasioned thereby to her real estate, and not for taking such ice.

2. SAME—EVIDENCE.
   In an action to recover damages for cutting and removing ice from plaintiff's land, the market value of harvested ice does not furnish a proper criterion for determining the value of unharvested ice which has no market value.

Appeal from judgment on report of referee.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*Esek Cowen,* for appellant. *R. W. Brass* and *W. F. Bentler,* for respondents.

INGALLS, J. This action was commenced by Catharine Van Rensselaer, the testatrix, to recover damages of the defendant for wrongfully entering upon her land and cutting and removing therefrom a quantity of ice. The plaintiffs established upon the trial that at the time the ice was cut and removed by the defendant, and at the time of the death of Catharine Van Rensselaer, she was seized and possessed of the land under the waters of the Hudson river where the ice was cut by defendant. The report of the referee contains the following findings of fact: "Several years prior to the time of the first cutting of ice by defendant, hereinafter mentioned, the state of New York had constructed a dyke in said Hudson river, from a point in the east bank thereof at a considerable distance above the said premises of plaintiffs' testatrix, and above the ice-houses of the defendant, hereinafter mentioned, down the river in a southerly direction past the said ice-house, and crossing

the said premises of the plaintiffs' testatrix and extending to the southerly
bound thereof, and separating about one-third of the said premises of plain-
tiffs' testatrix from the part of said premises and of the Hudson river lying
westward of said dyke, and separating that portion of the Hudson river lying
east of said dyke from the channel and navigable waters of said river, and
that said dyke had been extended and continued below said premises and
further south in said river by the United States; that the defendant was en-
gaged in the business of cutting, storing, and selling ice, and was the owner
of and operated certain ice-houses situated on the east bank of said river,
and six hundred or seven hundred feet northerly from the said premises of
the plaintiffs' testatrix; that said dyke was constructed without openings
therein to admit of passing from that portion of the river lying westward
thereof to that portion of the river lying eastward thereof, and that the
defendant, in December, 1880, made, or caused to be made, such an open-
ing in said dyke at a point upon the said premises of plaintiffs' testatrix,
and about two hundred and fifty feet below the northerly line thereof; that
the plaintiffs' testatrix never cut and gathered for sale or sold any of the ice
which formed in the Hudson river in front of or upon her said premises, and
did not inclose her said premises, or mark the boundaries thereof, either in-
side or outside the said dyke; that the defendant, without permission or con-
sent of the plaintiffs' testatrix, cut and removed and stored in his ice-house,
and sold or used for his own purposes, ice from the surface of the water over
the said premises of said testatrix, inside the said dyke, in December, 1879,
February, 1880, December, 1880, February, 1881, December, 1881, February,
1882, December, 1884, and in the early part of the year 1885, and prior to
April 1st therein, and at each of said times he cut over an area bounded north
by her north line, west by a line fifteen feet from the east line of the dyke,
east by a line fifteen feet from the shore, and south by a line running from
the south side of the cut in the dyke to the shore, parallel with the north line,
and that the ice so cut by him was from ten to twelve or more inches in thick-
ness, and of fair to good merchantable quality, and the quantity of ice so cut
by him at each of said cuttings was about five hundred tons; that the de-
fendant, without the permission of the plaintiffs' testatrix, cut and removed
and stored in his ice-houses, and sold or used for his own purposes, ice from
the surface of the water over the said premises of said testatrix, outside of
said dyke, in February, 1881, December, 1881, and February, 1882, and at
each of said times he so cut over an area about four hundred feet in length
and two hundred feet in breadth, and the ice taken therefrom was taken by
him through the cut made by him in said dyke and thence up inside of said
dyke to his ice-houses, and that the ice so cut by him was from eight to twelve
inches in thickness and of fair to good merchantable quality, and the quantity
of ice so cut by him at each of said cuttings was about fifteen hundred tons;
that at the times of such cuttings and gatherings of said ice by the defendant
there was no market value for said ice as it lay unharvested in the place
where it was so cut by the defendant, but that the said ice was of some value
as it so lay before being cut by the defendant." The referee made the fol-
lowing findings upon the request of the defendant: "(2) That the point where
the ice was taken by defendant was below where the tide ebbs and flows. (3)
That the waters from which the ice was taken and sued for in the above ac-
tion was a navigable river. (4) That said ice was taken from the Hudson
river, on the east bank of which lies the land claimed to be owned by the
plaintiff Catharine Van Rensselaer. (5) That the plaintiff did not, during
the years 1879, 1880, 1881, 1882, 1883, 1884, 1885, 1886, mentioned in the
complaint herein, and the time it is claimed defendant took the ice from the
said river, stake out or put up safeguards, or inclose in any manner what-
ever the ice, or any portion thereof, in front of premises claimed by her upon
the Hudson river, as required by chapter 388 of the laws of 1879."

It appears by the facts found by the referee, and the evidence is to the effect, that, previous to the cutting and removal by the defendant, the ice remained precisely as it formed in the river. The plaintiffs' testatrix had not even marked it for cutting, or placed around it or upon it anything to indicate that she purposed to harvest the same. There was no severance by which the ice took the form of personal property or which indicated an intention on the part of Mrs. Van Rensselaer to make it such. If she had caused the ice to be cut into blocks it would have given it the appearance of personal property, and amounted to a strong assertion that she regarded it as such in her possession. Considering the character of the stream, the situation of the ice before its removal by the defendant, and the manner it had been treated by Mrs. Van Rensselaer, we conclude that, if she possessed any property in the ice, it could only be regarded an incident to the land, to which it had become temporarily attached. Exactly what such interest was it is quite difficult, under the circumstances, to apprehend or define. *Huntington* v. *Asher*, 96 N. Y. 604. Whether ice which is formed on a navigable stream like the Hudson river can be considered property in such a sense that the owner of the land under the water where the ice has formed can appropriate the same to his use, to the exclusion of all others, is a question which has been much discussed, and in regard to which the decisions of the courts have not been uniform. Much may be said, with apparent reason, upon either side of the question. The owner of land through which a stream of water flows may use the water to a limited extent, but not in manner or quantity so as unreasonably to prejudice the rights of other riparian owners, nor so as to interfere with navigation, if the stream is navigable. In 3 Kent, Comm. 439, the author, commenting upon the subject, remarks in regard to the right of the owner of the land through which such stream of water flows as follows: "He has no property in the water itself, but a simple usufruct while it passes along." Though he may use the water while it runs over his land, he cannot unreasonably detain it or give it another direction." How far this principle may be regarded as applicable to ice formed in such stream, which is only water frozen, and destined to become liquid in a few months at furthest, may be regarded, as to some of the important features involved, a mooted question. The view which we take of this case upon this appeal does not render it necessary to further consider the question to which we have referred. We are satisfied that the learned referee adopted a rule of damages not justified by the facts of the case. The action is brought to recover damages against the defendant for a wrongful entry upon the lands of the testatrix and cutting and removing ice. The cutting and removing of such ice, if it created any right of action against the defendant, must, we think, depend upon whether it can be regarded an injury to the real estate of the owner, and consequently the amount of the recovery must be such as to compensate for such injury only.

It seems probable that the referee, in estimating the amount of the damages, regarded the ice as permanent property, rather than as an incident to the land. He allowed witnesses, under objection made by the defendant, to state the market value of ice which had been cut and stored for sale. This we deem erroneous, as furnishing no proper criterion by which to determine the value of the ice in question before it was harvested. Several important elements necessarily entered in to make up the price of ice prepared for market; among them the expenses attending the harvesting; the capital involved in the purchase of land, and the erection thereon of suitable buildings and appurtenances for storing, and the profits. The evidence fails to inform us in regard to such items of expenditure, and, consequently, we have before us only the opinion of the witness as to the value of a marketable commodity, which had a market value, by which to fix the value of an article which confessedly had no market value. The referee, as we have seen, has found expressly that the ice in question before it was harvested had no market value.

We are not able to infer that the admission of such evidence did no harm, as the contrary seems probable from the facts stated in the report of the referee. Again, witnesses were allowed to state, against the objection of the defendant, the value of the ice in question before it was harvested.   This seems inadmissible in regard to a commodity which had no market value, and especially so when the opinion was received of some of the witnesses who were shown by their own evidence to have had no reliable knowledge or information in regard to the price or value of ice thus situated.   *Morehouse* v. *Mathews*, 2 N. Y. 514; *Whitney* v. *Taylor*, 54 Barb. 536; *Cook* v. *Brockway*, 21 Barb. 331; *Hager* v. *Edmonds*, 4 Barb. 256; *Smith* v. *Griswold*, 15 Hun, 273; *Armstrong* v. *Smith*, 44 Barb. 120.   The plaintiffs could only recover the damages which were real, and not speculative; and in an action so peculiar in regard to its facts as the present one, great care should be exercised in adopting a proper basis for such estimate.   It is contended by the counsel for the defendant, if we rightly understand his position, that if the plaintiffs are entitled to recover beyond nominal damages, they must be limited to the difference between the value of the real estate before and after the removal of the ice.   *Argotsinger* v. *Vines*, 82 N. Y. 309.   We do not undertake so to limit the inquiry, nor do we purpose to prescribe any particular rule to be followed in ascertaining the damages, as the facts may be changed upon another trial.   We refer to *Whitbeck* v. *Railroad Co.*, 36 Barb. 644, which is mentioned and distinguished in *Argotsinger* v. *Vines*, *supra*.

The judgment must be reversed, and a new trial ordered before another referee, with costs to abide the event of the action.