Ingalls, J.
This action was commenced by Catherine "Van Rensselaer, the testatrix, to recover damages of the defendant for wrongfully entering upon her land and cutting and removing therefrom a quantity of ice. The plaintiffs established upon the trial that at the time the ice was cut and removed by the defendant, and at the time of the death of Catherine Van Rensselaer, she was seized and possessed of the land under the waters of the Hudson river, where the ice was cut by defendant. The report of the referee contains the following findings of fact:
“Several years prior to the time of the first cutting of ice by defendant, hereinafter mentioned, the state of Hew York had constructed a dyke in said Hudson river, from a point in the east bank thereof at a considerable distance above the said premises of plaintiffs’ testatrix, and above the ice houses of the defendant, hereinafter mentioned, down the river in a southerly direction, past the said ice houses, and crossing the said premises of the plaintiffs’ testatrix and extending to the southerly bound thereof, and separating about one-third of the said premises of plaintiffs’ testatrix from the part of said premises and of the Hudson river lying westward of said dyke, and sepa *466 rating that portion of the Hudson lying east of said dyke,, from the channel and navigable waters of said river, and that said dyke had been extended and continued below said premises and further south in said river by the United. States.
< That the defendant was engaged in the business of cutting, storing and selling ice, and was the owner of, and operated certain ice houses situated on the east bank of said river, and six hundred or seven hundred feet northerly from the said premises of the plaintiffs’ testatrix. That said dyke was constructed without openings therein to admit of passing from that portion of the river lying westward thereof to that portion of the river lying eastward thereof, and that the defendant, in December, 1880, made, or caused to be made, such an opening in said dyke at a point upon the said premises of plaintiffs’ testatrix, and about two hundred and fifty feet below the northerly line thereof. That, the plaintiff’s testatrix never cut and gathered for sale or sold any of the ice which formed in the Hudson river in front of or upon her said premises, and did not enclose her said premises or mark the boundaries thereof, either inside or outside the said dyke. That the defendant, without permission or consent of the plaintiffs’ testatrix, cut and removed and stored in his ice houses and sold or used for his own purposes, ice from the surface of the water over the said premises, of said testatrix, inside the said dyke, in December, 1879, February, 1880, December, 1880, February, 1881, December, 1881, February, 1882, December, 1884, and in the early part of the year 1885, and prior to April 1st therein, and at each of said times he cut over an area bounded north by her north line, west by a line fifteen feet from the east line of the dyke, east by a line fifteen feet from the shore, and south by a line running from the south side of the cut in the dyke to the shore, parallel with the north line, and that the ice so cut by him was from ten to twelve or more inches in thickness and of fair to good merchantable quality, and the quantity of ice so cut by him at each of said cuttings was about five hundred tons.
That the defendant, without the permission of the plaintiff’s testatrix, cut and removed and stored in his ice houses and sold or used for his own purposes ice from the surface of the water over the said premises of said testatrix, outside of said dyke, in February, 1881, December, 1881, and February, 1882, and at each of said times he so cut over an area about four hundred feet in length and two hundred feet in breadth, and the ice taken therefrom, was taken by him through the cut made by him in said dyke and thence up inside of said dyke to his ice houses, and that the ice so cut by him was from eight to twelve inches in thickness and of fair to good merchantable quality, and the quantity of ice so cut by him at each of said cuttings was about fifteen hundred tons.
*467 That at the times of such cuttings and gatherings of said ice by the defendant, there was no market value for said ice as it lay unharvested in the place where it was so cut by the defendant, but that the said ice was of some value, as it so lay before being cut by the defendant.
The referee made the following findings upon the request of the defendant:
Second. That the point where the ice was taken by defendant was below where the tide ebbs and flows.
Third. That the waters from which the ice was taken and sued for in the above action was a navigable river.
Fourth. That said ice was taken from the Hudson river on the east bank of which lies the land claimed to be owned by the plaintiff, Catharine W. Van Rensselaer.
Fifth. That the plaintiff did not, during the years 1879, 1880, 1881, 1882, 1883, 1884, 1885, 1886, mentioned in the complaint herein, and the time it is claimed defendant took the ice from the said river, stake out or put up safeguards, or enclose in any manner, whatever, the ice or any portion thereof, in front of premises claimed by her upon the Hudson river, as required by chapter 388 of the laws of 1879.
It appears by the facts found by the referee and the evidence is to the effect, that previous to the cutting and removal by the defendant, the ice remained precisely as it formed in the river.
The plaintiffs’ testatrix had not even marked it for cutting, or placed around it, or upon it, anything to indicate that she purposed to harvest the same. There was no severance, by which the ice took the form of personal property, or which indicated an intention on the part of Mrs. Van Rensselaer to make it such. If she had caused the ice to be cut into blocks, it could have given it the appearance of personal property; and amounted to a strong assertion that she regarded it as such in her possession. Considering the character of the stream, the situation of the ice before its removal by the defendant, and the man - ner it had been treated by Mrs. Van Rensselaer, we con elude, that if she possessed any property in the ice, it could only be regarded an incident to the land, to which it had became temporarily attached. Exactly what such interest was, it is quite difficult, under the circumstances, to apprehend or define. Huntington v. Asher, 96 N. Y., 604.
Whether ice which is formed on a navigable stream, like the Hudson river, can be considered property in such a sense, that the owner of the land under the water, where the ice has formed, can appropriate the same to his use, to the exclusion of all others, is a question which has been much discussed, and in regard to which the decisions of the *468 courts have not been uniform. Much may be said, with apparent reason, upon either side of the question. The owner of land, through which a stream of water flows, may use the water to a limited extent, but not in manner or quantity, so as unreasonably to prejudice the rights of other riparian owners, nor so as to interfere with navigation, if -the stream is navigable.
In Kent’s Commentaries (vol. 3, p. 439), the author, commenting upon the subject, remarks, in regard to the right of the owner of the land through which such stream of water flows, as follows : “ He has no property in the water itself, but a simple usufruct while it passes along. Though he may use the water while it runs over his land, he cannot unreasonably detain it or give it another direction.”
How far this principle may be regarded as applicable to ice formed in such stream, which is only water frozen and destined to become liquid, in a few months at furthest, may be regarded, as to some of the important features involved, a mooted question.
The view which we take of this case, upon this appeal, does not render it necessary to further consider the question to which we have referred. We are satisfied that the learned referee adopted a rule of damages not justified by the facts of the case. The action is brought to recover • damages against the defendant for a wrongful entry upon the lands of the testatrix, and cutting and removing ice. The cutting and removing of such ice, if it created any right of action against the defendant, must, we think, depend upon whether it can be regarded an injury to the real estate of the owner, and consequently the amount of the recovery must be such as to compensate for such injury only.
It seems probable that the referee, in estimating the amount of the damages, regarded the ice as personal property, rather than as an incident to the land. He allowed witnesses, under objection made by the defendant, to state the market value of ice which had been cut and stored for sale.
This we deem erroneous, as furnishing no proper criterion by which to determine the value of the ice in question, before it was harvested. Several important elements necessarily entered in to make up the price of ice prepared for market. Among them the expenses attending the harvesting. The capital involved in the purchase of land, and the erection thereon of suitable buildings, and appurtenances for storing. And the profits. The evidence fails to inform us in regard to such items of expenditure, and consequently we have before us only the opinion of the witness as to the value of a marketable commodity, which
*469 had a market value by which to fix the value of an article, which, confessedly, had no market value. The referee, as we have seen, has found expressly that the ice in question, before it was harvested, had no market value. We are not able to infer that the admission of such evidence did no harm, as the contrary seems probable from the facts stated in the report of the referee. Again, witnesses were allowed to state, against the objection of the defendant, the value of the ice in question before it was harvested. This seems inadmissible in regard to a commodity which had no market value. And especially so when the opinion was received of some of the witnesses who were shown by their own evidence to have had no reliable knowledge or information in regard to the price or value of ice thus situated. Morehouse v. Mathews, 2 N. Y., 514; Whitney v. Taylor, 54 Barb., 536; Cook v. Brockway, 21 Barb., 331; Hager v. Edmonds, 4 id., 256; Smith v. Griswold, 15 Hun, 273; Armstrong v. Smith, 44 Barb., 120. The plaintiffs could only recover the damages which were real and not speculative. And in an action so peculiar in regard to its facts as the present one, great care should be exercised in adopting a proper basis for such estimate. It is contended by the counsel for the defendant, if we rightly understand his position, that if the plaintiffs are entitled to recover beyond nominal damages they must be limited to the difference between the value of the real estate before and after the removal of the ice. Argotsinger v. Vines, 82 N. Y., 309. We do not undertake so to. limit the inquiry, nor do we purpose to prescribe any particular rule to be followed in ascertaining the damages, as the facts may be changed upon another trial. We refer to Whitbeck v. N. Y. C. R. R. Co. (36 Barb., 644), which is mentioned and distinguished in Argotsinger v. Vines (supra). The judgment must be reversed and a new trial ordered before another referee, with costs to abide the event of the action.
Learned, P. J., and Landon, J., concur.