CULLEN, J.
One Samuel Wood, at the time of his decease, was seised and possessed of a tract of land at Woodsburgh, which, he devised to his executors and trustees upon certain trusts, and ■also empowered his executors to sell and convey the same. On November 7, 1885, the executors and trustees of Samuel Wood -conveyed to the plaintiff a tract of land fronting on the Woods-burgh boulevard and Franklin avenue. This conveyance cut off ■from access to the boulevard and Franklin avenue a tract of which the trustees remained the owners, lying in the rear of the tract •"Conveyed to the plaintiff. For this reason the deed to the plaintiff ■contained a provision authorizing the grantors to extend another street, called “Neptune Avenue,” through the premises conveyed, upon conveying to the grantor an equivalent amount of equally ■desirable land. The rear plot, which remained in the ownership and possession of the trustees, is called the “20-acre lot." In -July, 1886, the plaintiff and the trustees of Samuel Wood executed the following agreement:
“ This agreement, made by and between Edward T. Scheneclc •and Alfred L. Simonson, as surviving executors of and trustees under the will of Samuel Wood, deceased, parties of the first part, and Benjamin E. Valentine, party of the second part:
“Whereas, said parties are owners of real estate at Woodsburgh, fin the town of Hempstead, L. I., which is adapted for villa sites, 3but which has not yet been suitably opened by roads and streets ; *840 and whereas, the parties are desirous of making such agreement in relation thereto as shall be advantageous to the premises of botht Now, therefore, the parties, in consideration of their mutual undertakings, agree as follows:
“(1) Said parties of the first part agree that the highway known, as ‘Franklin Avenue’ maybe extended on the northerly line thereof, where it passes through their premises, by increasing its width to a uniform distance of 60 feet, as adopted for other streets-on the Wood estate.
“(2) Said Valentine agrees that he will, at his own expense, build a fence of ceder along said northerly line, opposite his dwelling, like the fence on the southerly side of said Franklin avenue.
“ (3) Said parties of the first part agree that they will dedicate, and that said Valentine may open, for the purposes of a public-highway, having a width of 60 feet, a road through and along the-northerly line (or at a distance of 1 foot therefrom) of their lot, adjoining premises of said Valentine, known as the ‘20-acre lot of the Wood estate’ and designated on the annexed diagram by the-letter ‘A.’ This dedication and opening is to be without expense-to the parties of the first part, except for such surveyor’s fees and other disbursements as may be reasonably required for fixing the-boundaries, and for maps, etc.
“ (4) Said Valentine agrees that the parties of the first part shall' have a roadway and right to open a road 60 feet in width from the westerly terminus of said last-named road, over the premises-of said Valentine, designated on the annexed diagram by the letter ‘ B,’ substantially as indicated on -said diagram, to connect the said' road from the 20-acre lot of the Wood estate with said Franklin avenue or Sixth street. This to be taken in lieu of and as a substitute for the provision in deed of the parties dated November 7,. 1885, permitting the opening of Neptune avenue by the parties of the first part through land of said Valentine. And as an equivalent for the land of said Valentine so surrendered to the parties of the first part for said road, the parties of the first part agree to convey to the said Valentine that portion (of block 41, as shown on the map of Woodsburgh, filed in the Queens county clerk’s office) lying between boulevard, Sixth street, and Franklin avenue, which is designated on the annexed diagram by the letter ‘0.’’
“(5) Each of the parties hereto is to have the full and unrestricted right and privilege of access to and uses of all and every of said proposed roads and ways, and all parts thereof, for access-to and egrees from any and all of their own lands lying near the same, and for the use of- their survivors or grantees of any of the-said premises, without waiting for the acceptance of the same as-public highways by the town authorities.
“Witness our hands and seals this 26th day of July, 1896.”
After the execution of this agreement the plaintiff created and’ constructed a roadway through his own property from the 20-acre lot to the highway (Franklin avenue), and also a roadway along the whole north line of the 20-acre lot. The evidence showed that the defendant, who seems to have gone.into possession of the 20-acre lot in 1893 and 1894 used the part of the roadway on plaint *841 iff’s land to store his wagons and farming utensils, and obstructed, plowed up, and destroyed the roadway over the 20-acre lot. This-action was brought for damages, and to restrain the defendant’s, trespass on' the plaintiff’s land and his obstructing and injuring-the road over the 20-acre lot. The special term rendered judgment for the plaintiff for six cents damage, and enjoined the defendant as prayed for in the complaint.
The only objection raised to that part of the judgment which enjoins the defendant from trespassing on the plaintiff’s land is that he should have been remitted to his action at law. The answer to this is that the trespasses were repeated and continuous, and this is a good ground for equitable relief. Broiestedt v. Railroad Co., 55 N. Y. 220.
The serious attack, however, on this appeal, is directed against the relief granted plaintiff as to his roadway or right of way over •the 20-acre lot. It is denied that, at the time of the commencement of the action, the plaintiff had any right whatever in thexoadway. As many objections are raised against such right, it-will be necessary to discuss them seriatim.
First, it is said that the agreement created no valid dedication of the roadway across the 20-acre lot. This may be conceded, but it-is immaterial to the disposition of the case. Granting that the-roadway never became a public highway, still the provisions of the agreement are express:
“ Each of the parties hereto is to have the full and unrestricted right and privilege of access to and uses of all and every of said, proposed roads and ways, and all parts thereof, for access to and. egress from any and all of their own lands lying near the same,, and for the use of their survivors or grantees of any of the said ^premises, without waiting for the acceptance of the same as public “highways by the town authorities.”
There is no force in the objection that this clause does not use the word “ grant,” or purport in express words to grant to the parties a right of way. It is settled law that easements may be-, created by agreements or covenants that one shall have a right or privileges in the estate of another, as well as by express grants. Such agreements are grants in effect. Washb. Easem. (4th ed.) 43; Stetson v. Curtis, 119 Mass. 268; Wetmore v. Bruce, 118 N. Y. 319; 28 St. Rep. 687.
The validity df this agreement is next challenged on the ground that the trustees under the will of Samuel Wood had no power to-, execute it. To support this claim is cited the rule, often stated, “ that no one can grant an easement out of land, in favor of another, unless he has entire interest in the soil.” Washb. Easem. 46. 1 am frank to say that I do not understand the exact meaning of the doctrine thus pronounced. If it be intended to assert that no-one can grant an easement greater in extent or duration than can be carved out of the estate which the grantor has, the rule is. plain, and unquestionably sound. But if it is intended to go further, and assert that no easement, valid as against any person, can be granted except by the owner of the entire fee, I think it is- *842 unsound. Then, in Crippen v. Morss, 49 N. Y. 63, where one of several tenants in common granted an easement to a third party, it was held that- such grant was invalid only as to the other •tenants in common. I certainly can see no'reason why a life tenant cannot create an easement, extending during his life, as ■well as convey the land itself, or a part thereof, for the same period. The will of Samuel Wood devised his residuary estate which includes these, lands, to’his executors, and directed them to collect and receive the rents, and apply them for the purposes of the trust created by the will. Many of these trusts were annuities. On -this appeal the validity of the trusts created by Samuel Wood’s will has not been challenged. Therefore, we shall not discuss them. The provisions of the will we have referred to created an -active trust, and the trustees have the legal title to the lands during the life of the trust. It was shown that these have terminated.
I think the authority of the trustees to execute this agreement can also be upheld under the power of sale granted to them by the will. The lands were villa property, and could he best sold by division or subdivision into villa lots. For this purpose it was necessary they should have access to the highway. The agreement was beneficial to the estate, and was so found by the trial court. I can see no more objection to the execution of such an agreement with Valentine than the laying out of the streets on -the land itself, and selling lots on such streets, by which purchasers ■of the lots would obtain easements in the streets. If such were the advantageous way of disposing of the property, the trustees had power to adopt it, even though, as to the lands unsold, they would create easements in favor of the lands they might dispose ■of.
I agree with the counsel for the defendant that the grant of the right of way was not a grant in gross, personal to the plaintiff, but •appurtenant to the lands he then owned. The agreement próvides . that the parties shall have the use of the proposed roads, “for access to and egress from their own lands lying near the same, and for the use of their survivors or grantees.” The general rule is' "that a grant in gross is never presumed when it can be fairly con-' strued as appurtenant to some other estate (Washb. Easem. 45), j and certainly the language of the agreement supports the latter •construction (Huntington v. Asher, 96 N. Y. 604). The plain tiff | •still holds the premises then owned by him. He has since purchased a tract on the north of the roadway across the 20-acre lot. As owner of this last tract, he may have no right to use the road, but as owner of the first parcel he has the right to use it to go to the last purchase, or to any other point where he may be able to! •obtain exit. It will be seen, from tfie relative positions of thej property of the plaintiff and the 20-acre lot, that the roadway over; •the 20-acre lot was not necessary, nor could it be used as a means, •of obtaining access from plaintiff’s lot the highway. This part of the roadway was a mere cul de sac. When, therefore, the plaintiff was granted a right of way over it, he was entitled to go over át to any highway, or to any property which he might either havei *843 owned or have permission to go over. In other words, he was entitled to go over it to any point where he could find an exit, and •a similar right to return; and the new purchase neither increased nor diminished his rights in this respect, nor did it increase the ■extent of his grant.
It is further claimed that the plaintiff has lost whatever right he had under this agreement with the trustees. The first ground of this claim is that, before the commencement of the action, he conveyed the lands he had first purchased to one Elizabeth H. Valentine, who, in turn, reconveyed to him, and that in neither conveyance was there, in terms, any grant of the right of way. We think it entirely clear that the right of way passed to the grantee in these -conveyances under the term “appurtenances,” as appurtenant to ■the land conveyed. This is the general rule of law. 3 Washb. Real Prop. 394. The cases cited by the defendant’s counsel are' ■not in point. The question involved in those cases is whether, by the conveyance, there was an implied grant of an easement in -other lands of the grantor,—a question entirely different from that presented here. The settled rule is:
“All easements, properly so called, to which a landowner has a right in the soil of a third person, will pass to the grantee of the land under the general words of conveyance, ‘together with all -easements and appurtenances,’ and even if the word ‘easements’ is ■omitted, the word ‘appurtenances’ is sufficient to carry those rights.” God. Easem. 71.
As the plaintiff acquired his easement by grant, his title would mot be affected by a nonuser, unless accompanied with an intention to abandon the easement. Welsh v. Taylor, 134 N. Y. 450; 47 St. Rep. 653. We think that the evidence did not conclusively establish such intention.
The judgment appealed from should be affirmed, with costs.
BROWN, P. P., and BARLETT and HATCH, JJ., concur.