MARY C. PIERCE, Administratrix, etc., Respondent, *v.* SAMUEL KEATOR, Appellant.

P. and wife conveyed to the N. Y. & O. M. R. R. Co. the fee of a strip of land through the farm of P. The deed contained the following reservation : "Said parties of the first part also to have the privilege of mowing and cultivating the surplus ground of said strip of land not required for railroad purposes." At the time of the conveyance there was a mortgage on the farm, which was subsequently foreclosed. The deed given upon the foreclosure sale excepted the strip of land so conveyed, stating that it "is reserved as conveyed to said " O. & M. R. R. Co. Defendant, who succeeded to the title of the purchaser, entered upon the railroad land and cut and removed wheat growing thereon. In an action of trespass, *held*, that the reservation in the deed to the railroad company was not an easement appurtenant to the remaining portion of the farm, but a right to profits in the land conveyed reserved to the grantors personally, not as owners of or for the benefit of the farm ; that such right, therefore, did not pass by the deed on foreclosure sale ; and that defendant was liable.

The distinction between an easement and a right to *profit a prendre* pointed out.

(Argued June 8, 1877 ; decided September 18, 1877.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of the plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 9 Hun, 532.)

This was an action of trespass for entering upon certain land in Cortland county, and in cutting and carrying away therefrom a quantity of wheat.

The action was originally brought by Ethan A. Pierce, plaintiff's intestate, who sowed the wheat so taken. The wheat was taken from a strip of land which passed through and was formerly part of a farm owned by said Pierce, and was conveyed by him and wife to the New York & Oswego Midland Railroad Company.

The conveyance to the railroad company was a grant in fee, which contained the following reservation, among others, to wit: "Said parties of the first part also to have the privilege of mowing and cultivating the surplus ground of said strip of land not required for railroad purposes." At the time of the grant to the railroad company the farm was subject to a mortgage which was afterwards foreclosed. On the foreclosure sale one Elijah Wheeler became the purchaser and took the referee's deed. The defendant claims under Wheeler's title. The referee's deed to Wheeler embraced the entire farm, but contained the following: "Excepting and reserving, however, from the above described premises the following described premises, viz." (here follows a description of the strip conveyed to the railroad company by metes and bounds, closing as follows): "Containing six acres and 18-100 of an acre of land, more or less, which is reserved as conveyed to the said Oswego and Midland Railroad Company."

*Amasa J. Parker*, for the appellant. Whether the reservations in the deed were made for the benefit of Pierce individually, is to be determined by the language of the deed and the surrounding circumstances. (Shep. Touch, 88; Washb. on Easements, 21, 28.) All the interests reserved were appurtenant to the farm. (2 Washb. on R. P. [2d Ed.], 25, 79, 80; *Post* v. *Pearsell*, 22 Wend., 432, 433; Washb. on Easements, 80, 27; *Lansing* v. *Wiswall*, 5 Den., 213; *Kent* v. *Waite*, 10 Pick., 138; *Voorhees* v. *Burchard*, 55 N. Y., 98; *Borst* v. *Empire*, 5 id., 33, 38.)

*Horatio Ballard*, for the respondent. The reservation to Pierce was a personal right and not appurtenant to the land.

(*Ives* v. *Van Auken*, 34 Barb., 566; *Bridger* v. *Pierson*, 1 Lans., 481; 2 Black. Com., 20.) The defense under the alleged ownership of a license to cut and carry away thewheat, did not require the establishment of title to the land. (*Ex parte Coburn*, 1 Cow., 568; *Doolittle* v. *Eddy*, 7 Barb., 75; *Martin* v. *Houghton*, 21 How. Pr., 867; 3 Kent's Com., 452.)

CHURCH, Ch. J.   It is important to determine the nature of the right reserved in the deed of Pierce and wife to the New York and Oswego Midland Railroad Company. The reservation is in the following words:   " Said parties of the first part also to have the privilege of mowing and cultivating the surplus ground of said strip of land not required for railroad purposes."   The appellant contends that this right of mowing and cultivating was an easement appurtenant to the remaining portion of the farm, and would pass to the grantee of the remainder of the farm without description or specification.   The term easement has sometimes been applied to rights in or over land without strict regard to the recognized distinctions between the different kind or class of rights. These distinctions may be impaired and even obliterated by the circumstances attending, and the manner of their creation.

An easement is a liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil.   The essential qualities of easements are.   First. They are incorporeal.   Second. They are imposed upon corporeal property.   Third. They confer no right to a participation in the profits arising from such property, and, Fourth. There must be two distinct tenements, the *dominant* to which the right belongs, and the *servient* upon which the obligation rests.   (Bouviers Dict. Title, Easements; Wash. on Easements, Ch. 1, § 1, 4 Sandf. Chy. R., 89.)

The right to profits, denominated *profit a prendre*, consists of a right to take a part of the soil or produce of the land, in which there is a supposable value.   It is, in its nature, corporeal, and is capable of livery, while easements are not, and may exist independently without connection with or being

appendant to other property. (2 Wash. on Real Property, 26 [3d Ed.], 276; 22 Wend., 433.) The right reserved in the deed of Pierce and wife was a right to profits in the land, and was not, therefore, in strictness, an easement. From the nature of the right, we can see no connection between it and the ownership of the farm. The right to mow and cultivate this strip was in no way necessary to, or even useful, to the remainder of the farm, and it was not, therefore, appurtenant. It might have been regarded in the nature of an easement if the reservation had been made to Pierce, as owner of the farm, or on account of being the owner, but the language reserves the right to the parties of the first part, not to their heirs and assigns, nor to the owners of the farm, nor for the benefit of the farm or such owners. As the terms of the reservation indicate, a personal privilege, and as there is nothing in the nature of the right reserved connecting it in any manner with the owership or use of the remainder of the farm, there seems no alternative but to apply the established rules and recognized legal distinctions to the transaction. Ch. WALWORTH, in 22 Wend. (*supra*), said: "For a *profit a prendre* in the land of another, when not granted in favor of some *dominant* tenement, cannot be said to be an easement, but an interest or estate in the land itself."

The counsel for the appellant cited, also, from Washburn on Easements a general rule, expressed as follows: "This right of *profit a prendre*, if enjoyed by reason of holding certain other estate, is regarded in the light of an easement appurtenant to an estate; whereas, if it belongs to an individual, distinct from any ownership of other lands, it takes the character of an interest or estate in the land itself, rather than that of a proper easement in or out of the same."

The qualifications mentioned in these citations do not apply to the case at bar, for the reason before stated, that neither from the nature of the right, nor the terms of the grant, can it be affirmed that the right was enjoyed by reason of holding the farm, or on account of the estate. It is not

like the case of a grant of land, with the right to take wood from other land for the benefit of the estate granted. (Wash. on Easements, p. 8; see, also, 48 Maine, 83; 4 T. R., 717.)

It may be inferred that the right reserved entered into the consideration for the conveyance of Pierce to the railroad company, but the case is destitute of any circumstance tending to establish an intention to affix the right as appurtenant to the remainder of the farm. The contiguous rights secured by the deed do not change the character of this. They are, from their nature, appurtenant to the farm, and presumptively necessary to its enjoyment. This necessarily disposes of the defendant's claim of title to the wheat, through the title to this right obtained by the deed given upon the foreclosure.

The strip of land conveyed by Pierce to the railroad company was excepted and reserved from the referee's deed, and was not intended to be conveyed; and if the words, "as conveyed," were intended as an adoption of the terms of the deed by Pierce to the railroad company, yet the defendant would take nothing by the reservation to mow and cultivate, because, as we have seen, it was a reservation in favor of Pierce and wife personally, and would terminate upon the death of either. The uncertain character of this right to mow and cultivate, as reserved in the deed of Pierce, is significant also of an intention not to fasten it, as an enduring easement, to the remainder of the farm. The use of the strip for railroad purposes would operate to suspend or terminate the right at any time, and the railroad company would have the right at any time to determine the necessity of its use for such purposes, and hence the right is practically revocable at pleasure, and scarcely rises above the dignity of a personal license. We concur with the views expressed at Special and General Term, and it is unnecessary to elaborate them.

The judgment must be affirmed.

All concur, except EARL, J., dissenting; ALLEN, J., absent.

Judgment affirmed.