(35 Misc. Rep. 620.)

### FOSTER v. VILLAGE OF SOUTH GLENS FALLS.

(Supreme Court, Special Term, Saratoga County. July, 1901.)

1. DEED—CONSTRUCTION—PERSONAL LICENSE.

    A deed contained a clause giving a right of pasturage to the grantee in certain lands of the grantor situated between the granted premises and the Hudson river, with a provision that if the grantee at any time required a fence on those lands the right of pasturage should cease. *Held* a personal license, and does not run with the land.

2. SAME—EASEMENT.

    Where an easement granted by a deed is not an essential adjunct to the lands conveyed, its scope will be limited.

Action by Francis A. Foster against the village of South Glens Falls. Judgment for defendant.

E. T. Brackett, for plaintiff.

Ashley & Williams (T. W. McArthur and Henry W. Williams, of counsel), for defendant.

RUSSELL, J.   On the 10th day of September, 1867, James Morgan and others were owners of a farm of 180 acres in the town of Moreau, Saratoga county, and of a strip of land, now partially occupied by the defendant for reservoir purposes, lying between the farm and the Hudson river.   On that day the owners conveyed the farm to Martin Coffin by deed containing this clause: "With the right to pasture the lands between these premises and the river, but if at any time the party of the second part requires a fence on the lands the right of pasturing ceases."   Coffin afterwards conveyed to William Griffin, and Griffin to Daniel T. Wetsel, both deeds containing the same reference to the right of pasturage.   The plaintiff is the heir of Wetsel, and claims that the defendant, by increased flowage, has seriously disturbed her right of pasturage, but does not claim that this flowage in any way extends upon the farm of which she became so possessed.   At the time of the deed to Coffin the pasturage was of some value to the adjacent farm, and the lands between it and the river of little worth, the herbage being then and since somewhat scanty, and the water of the river unnecessary, as the farm was reasonably well supplied for that purpose.   The parties contracted with reference to the situation as it then existed, and looking to the immediate future, without apparent thought as to what might be the legal rights of others taking adverse titles at a distant period to the two pieces of land, which might be useful and valuable for very different purposes beyond the contemplation of these dealing with each other in the year 1867.   The very terms of the reservation imply the personal character of the license, and negative the idea that the pasturage right would go, by conveyance of the farm, to stranger hands, at a time when Coffin's present occupation of the lands as a farm would have ceased forever.   It was he who might require a fence, which was probable, if he allowed cattle to roam upon his farm, so that they would not pass to the other lands; and the suggestion of this cessation of the privilege indicates the indefinite character of the right, and its dependence upon the personal choice of Coffin himself, and not that of the future possessor of the farm lands, which might be used for very different purposes.   The fitful use of the lands between the farm and the river for pasturing by those occupying the farm indicates the small value placed upon the privilege, and the current acts of the owners of the farm from 1867 to 1894 tend to confirm the theory that it was not intended as a permanent grant of an appurtenant use of the other lands.   The theory of the law forbids the unlimited suspension of title to an interest in lands, and construes the terms of a grant in conformity with such theory.   Wherever an easement or an appurtenant is not an essential and necessary adjunct to lands conveyed, its scope will be limited.   Hence a reservation that the grantor should have the privilege of mowing and cultivating the surplus ground of a strip of ground not required for railroad pur-

poses was held to be reserved to the grantor personally, and not as owner of the farm. Pierce v. Keator, 70 N. Y. 419, 26 Am. Rep. 612. A covenant not to permit a grist mill to be erected does not run with the land, but is a personal contract only. Harsha v. Reid, 45 N. Y. 415. The surrounding circumstances, the situation of the parties, and the subject of the contract guide in the determination of the intention of the parties in the conveyance of lands. French v. Carhart, 1 N. Y. 96. I am of the opinion that the grantors Morgan and others did not intend to convey to Coffin, in addition to the farm, a perpetual incumbrance upon their other lands, and that the language of the privilege granted did not go beyond their real intent.

Judgment for defendant, with costs.