74   Mathews Slate Co., Inc., *v.* Advance Indust. Supply Co.

Third Department, November, 1918.         [Vol. 185.

it as " absence of part of end of index finger." No testimony was introduced at the hearing, but a discussion then had between the attorneys and the members of the Commission discloses that there was a loss of not less than one-quarter and not more than one-half of the distal phalange of the index finger, including a portion of the bone thereof. The X-ray photographs forming part of the record show that the loss more nearly approached a one-quarter than a one-half of the distal phalange. It is a " loss of the first phalange," not of a part thereof, which is made equivalent to the loss of one-half of the finger. (Workmen's Compensation Law, § 15, subd. 3.) It is not necessary that every particle of the first phalange be lost. Yet it is necessary to show that " substantially all of the portion of the finger so designated has been lost." (*Matter of Petrie*, 215 N. Y. 335.) A loss of one-quarter of the first phalange is not the loss of the entire phalange. (*Thompson* v. *Sherwood Shoe Co.*, 178 App. Div. 319.) The loss under consideration here was but little more than that considered in the *Thompson* case. It certainly did not approximate a loss of substantially all of the first phalange which was made the criterion by the *Petrie* case. The award was, therefore, erroneous.

The award should be reversed and the claim remitted to the Commission for further consideration.

All concurred.

Award reversed and matter remitted to the Commission.

———————

Mathews Slate Company of New York, Inc., Appellant, *v.* Advance Industrial Supply Company, Respondent.

Third Department, November 22, 1918.

**Real property — conveyance of slate quarry reserving right to have and to remove waste or rubbish stone — easements — profits a prendre — abandonment of easements or of profits a prendre.**

Where the owner of a farm of one hundred acres conveyed a lot of five and one-half acres which for many years had been used as a slate quarry, with a right of way to and from the quarry, and reserving to " himself

and his heirs and assigns all waste or rubbish stone which may be got at any time in working any of the quarries on said premises, and the right to remove the same at pleasure," and there is no expression in the deed of an intent to reserve the waste slate for the farm or for the grantor, as the owner of the farm, and there is no evidence of any use of waste slate upon the farm prior to the grant or of any intent so to use it, or of any scarcity of stone upon the farm, or of any projected improvement which would make its use convenient, the rights reserved were not appurtenant to the farm, but were in gross and belonged to the grantor and his heirs and assigns generally.

The rights of the grantor in the waste slate were not easements but profits *a prendre.*

Where it appears that the grantor thirteen years after the conveyance of the slate quarry conveyed his farm, making an exception of the quarry lot and reserving the right of way to and from said lot by the owners of the quarry, thereby voluntarily relinquishing all means of getting to the quarry lot himself to remove the waste slate, and that after thirty-three years no one having title has availed himself of the right to remove the waste slate, such right will be deemed to have been abandoned.

The abandonment of an easement or a profit *a prendre* is not established by a mere cesser to use, but when accompanied by other circumstances showing an intention to abandon, long disuse will establish it.

COCHRANE, J., and KELLOGG, P. J., dissented, with opinion.

APPEAL by the plaintiff, Mathews Slate Company of New York, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Washington on the 29th day of October, 1917, dismissing the complaint on the merits upon the decision of the court after a trial at the Washington Special Term.

*Rogers & Sawyer* [*Erskine C. Rogers* of counsel], for the appellant.

*J. B. McCormick,* for the respondent.

H. T. KELLOGG, J.:

This action was brought to restrain the defendant from entering upon premises of the plaintiff and removing waste slate piled thereon. The premises, consisting of a lot of five and a half acres, for many years have been used as a slate quarry. They were conveyed in the year 1871 to the predecessors of the plaintiff by one Frederick Ensign and wife, and were carved out of a farm of one hundred acres then owned by Ensign. As an appurtenance to the lot conveyed the grantors, by the same deed, also conveyed a

76 Mathews Slate Co., Inc., v. Advance Indust. Supply Co.

Third Department, November, 1918.          [Vol. 185.

right of way across the remainder of the farm, for access to the quarry from the highway, and for egress therefrom. The conveyance contained the following reservation: " They also reserve to said Ensign, and he is to have, himself and his heirs and assigns all the waste or rubbish stone which may be got out at any time in working any of the quarries on said premises and the right to remove the same at pleasure." Ensign and his wife conveyed the remainder of the farm in the year 1884 to one Potter, from whom title thereto came to this defendant. Ensign died in the year 1887, and in the year 1917 his heirs and next of kin made a conveyance of all the rights under the reservation to one Hulett, from whom a grant thereof has been made to this defendant. It is claimed that the rights reserved have been lost by abandonment.

After the grant of the five and a half acre lot, Ensign had no right to quarry, or to compel others to quarry thereon. When, however, quarrying was done, he had the right to go upon the lot and take away the waste slate, not suitable for market, which was thrown aside. Doubtless, this waste slate was real estate. It had once been severed from the land, but after severance, when the market slate had been removed, it was discarded and thrown broadcast upon the lot. It became real estate as much as would stone drawn from the fields to the fence lines, as manure taken from piles and scattered upon the ground, as tailings from a mine, and, being real estate, title thereto did not pass to Ensign until by removal he again severed it from the ground. He had title, therefore, prior to such removal, not to concrete property but to rights thereover. These rights were not easements but profits a prendre. (Post v. Pearsall, 22 Wend. 433.) Although the defendant is the successor in title of Ensign, both as to the farm retained by him, and as to any rights in the waste slate passing to his heirs and remaining unextinguished, it is, nevertheless, important to determine whether these rights were reserved to be held in gross or as appurtenant to the farm. If the former were the case, abandonment thereof would depend upon the conduct of Ensign and his heirs; if the latter were the case, upon the conduct of those having title to the farm.

In reaching his conclusion that these rights were appurtenant, Mr. Justice Cochrane, who also writes in this

case, lays stress upon the fact that the reservation thereof was not alone to Ensign, but also to " himself and his heirs and assigns." It seems to me that he loses sight of the fact that Ensign might have other heirs or assigns than the heirs or assigns of his farm, and that he fails to note an important distinction between easements and profits *a prendre*. The existence of the former generally implies the existence of a dominant and a servient estate. Although easements may in some instances be created to be held in gross, yet such easements are always personal, and never inheritable or assignable. On the other hand, profits *a prendre* in gross may be both inheritable and assignable. " An easement proper in gross cannot be created by grant so as to be assignable or inheritable." (*Huntington* v. *Asher*, 26 Hun, 498; *Ackroyd* v. *Smith*, 10 C. B. 164.) A profit in gross may be transferred or inherited. (*Huntington* v. *Asher, supra.*) The distinction is recognized by Washburn, who says: " If the easement consists in a right of *profit a prendre*, such as taking soil, gravel, minerals, and the like, from another's land, it is so far of the character of an estate or interest in the land itself, that, if granted to one in gross, it is treated as an estate, and may, therefore, be one for life or inheritance. But if it is an easement proper, such as a right of way and the like, and is granted in gross, it is a mere personal interest, and not inheritable." (Wash. Ease. & Serv. [4th ed.] 13.) Such being the well-established rule it will readily be seen that, in the case of an easement, the fact that it is granted or reserved for the benefit of " heirs and assigns " is material, for it could not be so held unless it were appurtenant to land. It is otherwise in the case of profits, which are assignable whether they are in gross or appurtenant.

In *Grubb* v. *Guilford* (4 Watts, 223) there was a conveyance of twenty acres with the right to enter upon lands remaining in the grantor to search for, mine and carry away iron ore. It was held that this was a profit *a prendre* not appurtenant to the land conveyed. The reason given was that it was in no manner necessary to the occupation of the twenty acres, and did not concern or affect it at all. This case is cited with approval in *Huntington* v. *Asher* (96 N. Y. 611). In *Bailey* v. *Stephens* (12 C. B. [N. S.] 91) the defendant sought to

78    Mathews Slate Co., Inc., *v.* Advance Indust. Supply Co.

Third Department, November, 1918.          [Vol. 185.

justify a trespass upon lands of the plaintiff by a plea that
he was tenant of adjoining lands, and that long previously
there had been granted to the predecessor in title of his land-
lord, " his heirs and assigns, the right for himself and them-
selves, and his and their tenants, occupiers of the said land
for the time being, at their free will and pleasure, by them-
selves and their servants, to enter upon a certain strip of the
said close of the plaintiff," and to cut and carry away wood.
It was held that the plea was bad for the right was not
appurtenant to the lands occupied by the defendant.   Byles,
J., said: " It is in no way connected with the enjoyment of
the dominant tenement.   There is really no more connection
here, than if the owner of an estate in Northumberland were
to grant a right of way to an owner of another estate in Kent;
because as has been stated (see the case of *Ackroyd* v. *Smith*),
an incident of this nature cannot, even by express words in an
existing deed, be connected with the estate by the mere act of
the parties.   It must, in addition to that, have some natural
connection with the estate, as being for its benefit, or, as
has been expressed, it must inhere in the estate." In *Pierce*
v. *Keator* (70 N. Y. 419) one Pierce and wife sold a strip of
land from their farm owned by Pierce to a railroad with this
reservation: " Said parties of the first part also to have the
privilege of mowing and cultivating the surplus ground of
said strip of land not required for railroad purposes." The
farm was sold under foreclosure to the defendant who, claiming
to act under the reservation, cut the wheat growing on the
strip conveyed.   The administratrix of Pierce sued in trespass
and recovered.   Church, Ch. J., said: " The right to mow
and cultivate this strip was in no way necessary to, or even
useful to, the remainder of the farm, and it was not, therefore,
appurtenant." He also said: " From the nature of the right,
we can see no connection between it and the ownership of the
farm," and remarked that the case might have been different
had the reservation been to Pierce " as owner of the farm, or
on account of being the owner." It is true that the fact was
noted that the reservation was not to " heirs and assigns."
Of course, a grant without these words might be inconsistent
with the creation of a profit which is appurtenant, since all
profits and easements when made appurtenant are necessarily

inheritable and assignable with the lands to which they attach. However, though the absence of these words in a grant of a profit may be significant the presence of the words in a grant is not, since profits whether appurtenant or in gross are assignable and inheritable, and the words in either case are appropriate. In *Huntington* v. *Asher* (96 N. Y. 611) the profit was held to be appurtenant to the land conveyed because " It respected the use and occupation of the half acre; was necessary and essential to that use; and directly concerned the mode of occupying the land as contemplated both by vendor and vendee."

There is no evidence in this case of any use of waste slate upon the farm prior to the grant; of any intent so to use it; of any scarcity of stone upon the farm; of any projected farm improvement which would make its use convenient. There is no word in the deed expressing an intent to reserve the waste slate for the farm, or for the grantor as the owner of the farm. There is neither word nor fact which indicates that the purpose animating the reservation was particular rather than general. The lot was sold to become a quarry in a great slate producing region, and the production of waste slate in quantities far exceeding the possible needs of a single farm must have been anticipated. Its reservation for purposes other than those of the farm must, therefore, have been intended. The case is stronger than *Pierce* v. *Keator* for the use of hay upon a farm is commonly essential to its operation, whereas the use of slate is not. Indeed the position of this defendant is wholly inconsistent. It justifies its title through an assertion of a farm need of the waste slate, but it intends to use the waste otherwise than upon the farm in an industrial enterprise. It seems to me that upon all the authorities the rights reserved were not appurtenant to the farm but were in gross, and belonged to Ensign and his heirs and assigns generally.

The rights to the waste slate were not exercised by Ensign from the year 1884, when he sold his farm, to the year 1887, when he died. Nor were they exercised by his heirs from the year 1887 to the year 1917. Thus for thirty-three long years no one having title availed himself of the rights to remove waste slate. It is true that Ensign's successors in title to the farm occasionally gathered waste slate from the

**80**   MATHEWS SLATE CO., INC., *v.* ADVANCE INDUST. SUPPLY CO.

Third Department, November, 1918.        [Vol. 185.

quarry lot, but as rights thereto had not been conveyed to them, and were not appurtenant to the farm, their acts were as those of strangers.   The abandonment of an easement or a profit *a prendre* is not established by a mere cesser to use, but when accompanied by other circumstances showing an intention to abandon, long disuse will establish it.   (*Snell* v. *Levitt,* 110 N. Y. 595.)   Until recently, when a new process for roof surfacing requiring its use was discovered, the waste slate had little value. . This fact gives color to the thought that a cesser to use had its origin in an intent never to use. The thought is strengthened by a circumstance of importance. The quarry lot was an isolated .property, having no egress to a highway, except through the right of way across the Ensign farm, made appurtenant to the lot.   As Ensign owned the farm he did not impose this easement for the benefit of himself in obtaining waste slate, but for the benefit solely of the grantee of the quarry lot.   Now, when Ensign conveyed his farm in the year 1884, he made an exception of the quarry lot, and reserved " the right of way to go to and from said premises across the above. granted premises, as is granted in the deed of the same."   Thus the grant of the farm was made subject only to a right of way owned by those who owned the quarry lot, and no right of way was reserved by Ensign for himself to obtain access thereto. By this grant, therefore, Ensign voluntarily relinquished all means of getting to the quarry lot to remove the waste slate.   No stronger evidence of an intention never to remove, and, therefore, of an intention to abandon, could be had.   In my view the rights to the waste slate were long since relinquished.

The judgment should be reversed.

All concurred, except COCHRANE, J., dissenting, with an opinion, in which JOHN M. KELLOGG, P. J., concurred.

COCHRANE, J. (dissenting):

The reservation in the Ensign deed was to " himself and his heirs and assigns."   In *Pierce* v. *Keator* (70 N. Y. 419) the reservation was personal to the grantor and the court said: " It might have been regarded in the nature of an easement if the reservation had been made to Pierce, as owner of the farm, or on account of being the owner, but the language

reserves the right to the parties of the first part, not to their heirs and assigns, nor to the owners of the farm, nor for the benefit of the farm or such owners." Furthermore in that case the nature of the thing reserved indicated that it was not appurtenant to the remainder of the farm unsold. The court continued: " As the terms of the reservation indicate a personal privilege, and as there is nothing in the nature of the right reserved connecting it in any manner with the ownership or use of the remainder of the farm, there seems no alternative but to apply the established rules and recognized legal distinctions to the transaction. * * * The case is destitute of any circumstance tending to establish an intention to affix the right as appurtenant to the remainder of the farm." Here the only use which could be made of the thing reserved was in connection with the remainder of the farm. This waste material in 1871 when the reservation was made had no commercial or market value. It was not, and could not be sold to other parties. It was used solely on the farm by Ensign and his successors in title. At the present time this rubbish has a commercial value. But the question must be tested by conditions as they existed in 1871. For twenty-five years thereafter it was used intermittently on the farm exclusively by the various owners as the evidence discloses and as the trial justice has found. Whatever value this waste material had was in connection with the farm. It was, therefore, an appurtenant to the farm. (*Huntington* v. *Asher*, 96 N. Y. 604, 610; *Greenwood Lake & Port Jervis R. R. Co.* v. *New York & Greenwood Lake R. R. Co.*, 134 id. 435, 440.) Such appurtenance passed under the deed from Ensign to Potter. The defendant, therefore, as the successor in interest of Potter takes title independently of the deed from the Ensign heirs and as Potter and his successors have used the waste material on the farm there has been no abandonment.

I think, therefore, the judgment should be affirmed.

JOHN M. KELLOGG, P. J., concurred.

Judgment reversed on law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of the finding that there was not an abandonment.