## APPEAL OF JAMES DUGGAN, EXECUTOR, ESTATE OF HANNA DUGGAN.

### Docket No. 4706. Promulgated April 29, 1927.

1. On December 31, 1919, the decedent and her two brothers and a sister each owning one-fourth of the common stock of a coal-mining company transferred their respective shares of stock to

trustees to hold under the terms of a declaration of trust whereby the trustees were to pay the income to the creators of the trust with rights over to the survivors upon the death of any beneficiary. *Held*, that the value at the date of death of the interest of the decedent in the trust estate was properly included in the gross estate under section 402 (c) of the Revenue Act of 1921.

2. On March 31, 1920, the decedent assigned a one-sixth interest in the trust property to a brother and another one-sixth interest to a niece, each assignment being for the joint lives of assignor and assignee. *Held*, that the value of the interests assigned were improperly included in the gross estate.

*Herbert Pope, Esq.*, and *E. Barrett Prettyman, Esq.*, for the petitioner.

*J. F. Greaney, Esq.*, for the Commissioner.

This is a proceeding for the redetermination of a deficiency in estate tax of $19,122.42 upon the estate of a decedent who died May 18, 1923.

### FINDINGS OF FACT.

The petitioner is the executor of the estate of Hanna Duggan, who died testate on May 18, 1923. Prior to December 31, 1919, all the capital stock of the Johnson City and Big Muddy Coal and Mining Co., an Illinois corporation (hereinafter referred to as the Company), was owned in equal shares by four brothers and sisters, Michael Duggan, James Duggan, Margaret Duggan, and Hanna Duggan, all unmarried.

On December 31, 1919, the four stockholders, whose respective ages were then 67, 65, 59, and 50 years, entered into an agreement whereby they transferred their respective shares of stock in the Company to three trustees, Michael Duggan, Margaret Duggan, and Hanna Duggan, to hold under the terms and conditions of the agreement. The shares of stock in the Company at the time of the transfer had no established market price.

The agreement of December 31, 1919, provided in part as follows:

THAT WHEREAS, the parties of the first part are the owners of all of the capital stock of the Johnson City and Big Muddy Coal and Mining Company, an Illinois corporation, and are desirous not only of putting the control and management of said corporation and its business in said Trustees, but of giving to said Trustees power to control and manage the investment of said parties of the first part in the stock of said company with power to sell and exchange such stock and convert and invest said property in such other property as said Trustees may determine for the benefit of the beneficiaries hereinafter named.

NOW THEREFORE, for and in consideration of One ($1.00) Dollar and other good and valuable considerations, the receipt of which are hereby acknowledged, and for the purpose of accomplishing the objects herein set forth, said parties of the first part have assigned, transferred and set over and do hereby

assign, transfer and set over unto the said Trustees, as such trustees, and to their successors in trust hereby created, all the right, title and interest which the said parties of the first part now have in and to all of the capital stock of the said Johnson City and Big Muddy Coal & Mining Company, a corporation organized and existing under the laws of the State of Illinois, together with all rights appertaining thereto, To Have And To Hold upon the following trusts, uses and purposes:

\*       \*       \*       \*       \*       \*       \*

Third: The net income collected and received by said trustees from said trust estate shall be distributed from time to time as said trustees may in their discretion determine in equal shares to the parties of the first part, during their lives. Upon the death of one or more of said beneficiaries, the net income shall be distributed in equal shares amongst the survivors of said beneficiaries. When all of said beneficiaries shall have died except one, such sole surviving beneficiary shall be entitled to terminate this trust if he shall so elect, in which case all of the trust estate then remaining in the hands of said trustees shall be conveyed, assigned, transferred and set over to such surviving beneficiary. If such sole surviving beneficiary shall not at any time during his life elect to terminate this trust, he shall be entitled to receive all of the net income of said trust estate during his life and upon his death all of the property of the trust estate then remaining in the hands of said trustees shall be conveyed, assigned, transferred and set over to such person or persons as said sole surviving beneficiary may by his last will and testament appoint, and in default of such appointment, shall be conveyed, assigned, transferred and set over to the heirs of said sole surviving beneficiary according to the statutes of descent of the State of Illinois then in force.

In addition to the net income directed to be distributed amongst said beneficiaries as aforesaid, the trustees shall have power at any time and from time to time, in their discretion, to distribute in equal shares to the beneficiaries who at any time may be entitled to receive the net income of said trust estate as aforesaid, a portion or all of the principal of said trust estate at that time held by said trustees. No such distribution of principal, however, shall be made at any time unless all of the trustees hereunder shall concur in the making of such distribution.

On March 31, 1920, the four parties to the aforesaid trust agreement each by separate instrument assigned one-sixth of his or her interest under the trust agreement to Henry Duggan, their brother, and one-sixth to Hulda Duggan, their niece, the daughter of Henry, but " only for so long as said assignee may live, and only for so long as I am alive, and provided further that said assignee shall not have any right whatsoever to assign any interest acquired by virtue of these provisions."

During the early part of the year 1920 the trustees under the aforesaid trust agreement determined to liquidate and dissolve the Company pursuant to the statutes of Illinois and after providing for the payment of its debts retained the balance of the assets and in due course the Company was formally dissolved and a certificate of dissolution was issued by the Secretary of State of Illinois under date of December 31, 1921. The trustees sold the assets so retained and invested a part of the proceeds in various securities. The trus-

tees continued to administer all the trust property and at the date of the submission of this case continued to do so with the following exceptions:

On May 1, 1920, pursuant to authority granted by the trust instrument, they distributed $100,000 in cash (part of the principal of the trust property) equally between the four original beneficiaries and the two assignees, each receiving one-sixth thereof. On May 2, 1921, they distributed $396,000 par value of securities (part of the principal of the trust property) equally between the four original beneficiaries and the two assignees, each receiving one-sixth thereof. The trustees also distributed, from time to time, the income from the trust property, one-sixth to each of the four original beneficiaries and the two assignees.

Hanna Duggan, the decedent, was the youngest of the four parties to the trust agreement. The illness which resulted in her death at the age of 53 years was contracted some five months prior to her death. The trust agreement of December 31, 1919, and the assignments of March 31, 1920, were in full force and effect at the date of decedent's death, May 18, 1923.

The Commissioner included in the value of the gross estate of the decedent subject to the estate tax one-fourth of the value of the trust property in the hands of the trustees on May 18, 1923.

The petitioner, on December 23, 1924, paid the sum of $5,000 to attorneys on account for legal services in connection with the administration of the estate, which amount the Commissioner has allowed as a deduction from the gross estate.

On or about May 21, 1924, the trustees of the above described property received from the collector at Chicago, a notice and demand for payment of $10,527.37 additional income taxes determined to be due upon the income of the trust for the year 1920. These additional taxes were duly paid by the trustees. The Commissioner in determining the value of the gross estate of decedent has allowed the deduction of only $10,000 for such taxes while the total amount paid was $10,527.37.

OPINION.

SMITH: In his petition, the executor of the estate of Hanna Duggan, deceased, alleges a number of facts which are denied by the Commissioner in his answer. The facts alleged are the basis of a number of assignments of error, some of which have to do with an alleged failure of the Commissioner to deduct from the gross estate, executor's commissions payable in the sum of $3,500 and attorney's fees payable, but not paid, in the amount of $5,000 for services rendered or to be rendered to the estate. Inasmuch as the allegations of fact have not been proven by any evidence submitted in the case, the assignments will not be further considered.

The petitioner further alleges that the Commissioner in determining the value of the trust property on May 18, 1923, one-fourth of which value he included in the gross estate of the decedent, failed to deduct from such value, or otherwise to adjust that value so as to exclude therefrom, the amount of $527.37 paid by the trustees after the death of the decedent for income taxes payable for the year 1920 upon income of the trust; that while the Commissioner allowed the deduction of $10,000 for such taxes paid in 1924, the amount actually paid in 1924 was $10,527.37. The respondent admits error as alleged. Proper adjustment should be made therefor in the redetermination of the deficiency.

The remaining and principal issue is that the Commissioner erred in including in the gross estate and in the net estate, any amount representing the value of any of the property held by trustees on May 18, 1923, under the trust agreement of December 31, 1919. With respect to this issue, the petitioner alleges error on the part of the respondent as follows:

(1) The Commissioner included as part of the gross estate of the decedent, one-fourth of the value on May 18, 1923, of certain property then held by Michael Duggan, Margaret Duggan, and Hanna Duggan, as trustees, under an agreement made by and between the decedent, Michael Duggan, Margaret Duggan, and James Duggan as first parties and the trustees as second parties, on December 31, 1919.

(2) The Commissioner included as part of the gross estate of the decedent, the value on May 18, 1923, of certain beneficial interests under said trust agreement of December 31, 1919, which beneficial interests were assigned by the decedent to two assignees on March 31, 1920.

In support of this appeal counsel for the petitioner relies upon the following proposition of law:

If the property transferred by Hanna Duggan by the instrument of December 31, 1919, and/or by the assignments of March 31, 1920, and/or the property or any part thereof held by the trustees on May 18, 1923, the date of decedent's death, be held to be a part of her gross estate within the meaning of section 402 of the Revenue Act of 1921, nevertheless, a tax thereby imposed upon the transfer of such property is invalid, because the act is unconstitutional in so far as it requires the executor of the estate to pay a tax upon the transfer of property which has not and can not come into his hands as such executor; and further, because these transfers were fully executed transactions before the passage of the Revenue Act of 1921 and it can not be applied retroactively to them.

At the hearing of the appeal and in his brief, counsel for the petitioner has made many arguments which will be given consideration hereinafter.

Sections 401 and 402 of the Revenue Act of 1921, under which the tax is levied, so far as pertinent to the issues, read as follows:

SEC. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States * * *.

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

   *       *       *       *       *       *       *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The 1918 and 1921 Revenue Acts are identical with respect to the provisions quoted. The estate tax imposed by both Acts is a tax upon the transfer " of the net estate of every decedent dying after the passage of " the Act. In referring to this tax imposed by the Revenue Act of 1918 the Supreme Court of the United States in *Edwards* v. *Slocum*, 264 U. S. 61, said:

It comes into existence before and is independent of the receipt of the property by the legatee. It taxes, as Hanson, Death Duties, puts it in a passage cited in 178 U. S. 49, "not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death."

In *Y. M. C. A.* v. *Davis*, 264 U. S. 47, the same court said:

What was being imposed here was an excise upon the transfer of an estate upon death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties as distinguished from a legacy or succession tax.

The method of determining the net estate to which the tax attaches is clearly laid down in the statute. It is that portion of the gross estate of the decedent which remains after making certain deductions therefrom. Among the items to be included in the gross estate is property " to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * except in the case of a bona fide sale for a fair consideration in money or money's worth." The petitioner does not contend nor does the evidence show that the transfer to the trustees

was a bona fide sale for a fair consideration. It is the contention of the respondent that on December 31, 1919, the decedent had an interest in property with respect to which on that date she created a trust intended to take effect in possession or enjoyment at or after her death and that the value of such interest as she had in that property on the date of death was properly included in the gross estate for the purpose of determining the amount of the estate tax. Petitioner contends that the trust created was not one intended to take effect in possession or enjoyment at or after death within the meaning of section 402(c) of the statute.

In *Coolidge* v. *Nichols*, 4 Fed. (2d) 112, it is stated:

The term "intended to take effect in possession or enjoyment at or after his death" and the term "in contemplation of death" had both been frequently the subject of judicial definition, and it may be assumed that in drafting the act Congress had in mind these definitions. We find that the courts had held that a transfer in trust similar to the one before us in this case, where the donor had parted with all his interest in property that was to be held in trust until on or after the death of the donor, was a transfer to take effect in possession or enjoyment on or after death.

In *Safe Deposit & Trust Co.* v. *Tait*, 295 Fed. 429, a husband and wife each conveyed property to a common trustee, each to receive the income from the property conveyed by him or her during life with remainders over. The court held that such deeds did not constitute *bona fide* sales for consideration within the exception contained in section 402(c) of the Revenue Act of 1918; that the effect of the transactions was to create a trust in contemplation of death; and that the trust created was one intended to take effect in possession and enjoyment at or after death.

It has consistently been held that the reservation of the income of a trust fund to the donor for life is a trust intended to take effect in possession or enjoyment at or after death. *In re Masury's Estate*, 51 N. Y. S. 331; *In re Brandreth's Estate*, 169 N. Y. 437; 62 N. E. 563; *In re Cornell's Estate*, 70 N. Y. 423; 63 N. E. 445; *In re Bottomley's Estate*, 92 N. J. Eq. 202; 111 Atl. 605; *Carter* v. *Bugbee*, 91 N. J. Law 438; 103 Atl. 818. See also *Matter of Keeney*, 194 N. Y. 281; 87 N. E. 428; affirmed 222 U. S. 525; and *State Street Trust Co.* v. *Stevens*, 209 Mass. 373; 95 N. E. 851.

In the instant case not only was the income of the trust fund reserved to the donor for the period of her life but also she was entitled to receive and actually did receive distributions from the corpus of the fund. This was in accordance with the trust agreement of December 31, 1919. She possibly might have received during her lifetime her entire share of the corpus of the trust property.

On behalf of the petitioner it is argued that the applicable section of the statute does not reach the particular kind of a trust created

by the agreement of December 31, 1919, since that was an agreement made between four people by virtue of a contract and was primarily for the purpose of putting the property in the hands of trustees to sell. It is also argued that each of the donors to the trust gained, by virtue of the agreement, a contingent right in the whole of the estate and that if the respondent were to be consistent in his theory of the case he should have included not only the value of the interest of the decedent in the property which she transferred to the trust but also her contingent right to receive the whole of the estate, dependent upon survivorship.

We think that it is immaterial that the trust was primarily created for the purpose of effecting a sale of the mining property. Even though this be the primary purpose of its creation, the trust agreement went further and provided for survivorship among the donors to the trust fund. By so doing it effected a testamentary disposition of the property. It made it possible for the donors to enjoy the property during their lives and at the same time provided to whom it should pass upon the death of any donor. The respondent has not attempted to include in the value of the gross estate of the decedent the contingent interest of the decedent in the trust property dependent upon survivorship.

On behalf of the petitioner it is contended that section 402 (c) of the taxing act does not apply to the particular property held by the trustees at the date of decedent's death because no part of that property was ever transferred by Hanna Duggan, the decedent, and could not on any theory be considered a part of her net estate and subject to a tax imposed only on the transfer of such net estate. We are of the opinion that this argument overlooks the provision of the statute which requires the inclusion in the gross estate of the value of the interest of the decedent in trust property, where the trust is intended to take effect in possession or enjoyment at or after death. In the instant case the trust agreement provided that the trustees might sell the shares of stock which were transferred to them and that they could either distribute the proceeds to the beneficiaries of the trust or distribute a portion and reinvest the balance in securities or property of any kind. The situation appears to be analogous to that which obtained in the case of *Reed* v. *Howbert*, 8 Fed. (2d) 641, wherein it is stated:

> The trustee, pursuant to powers granted by the trust instrument, made changes in the securities, so that at the time of Mr. Reed's death, some of the investments had never been owned by him.

In that case it was held that the value of the trust estate was to be included in the gross estate under section 402 (c) of the taxing statute. In our opinion it is immaterial that the property in the hands of the trustees at date of death was not the identical property

79705°—28——70

turned over to them by the creators of the trust. The interest of the decedent persisted in the converted property. Her interest in that property ceased on her death.

What was the value of the interest of Hanna Duggan in the trust property at the date of her death? The record does not disclose the value found by the respondent in dollars and cents. No exception is taken to the value found provided the method used was proper. The respondent held that the amount to be included was the value at the date of death of one-fourth of the trust fund. This is objected to on the part of the petitioner for the reason that on March 31, 1920, Hanna Duggan assigned one-sixth of her interest under the trust to Henry Duggan, her brother, and one-sixth to Hulda Duggan, her niece. These assignments were for the joint lives of assignor and assignee. While the assignees lived Hanna Duggan had no interest in the property assigned. They were living at the date of her death. It is the theory of the respondent that since all the income at the time of the creation of the trust on December 31, 1919, was reserved to the decedent for her life, the subsequent assignment of the right to receive a part of that income for a period which might possibly extend to the time of the death of the donor but could extend no farther and where even under such circumstances the corpus of the trusts could not pass in possession or enjoyment until at or after the donor's death, the transaction still remains a taxable transfer, that is, a transfer intended to take effect in possession or enjoyment at or after death. *In re Patterson's Estate*, 146 App. Div. 286; 130 N. Y. S. 970; 204 N. Y. 677; 98 N. E. 1109; and *Shukert* v. *Allen*, 6 Fed. (2d) 551, are cited in support of this proposition.

We think that this is not the proper interpretation of the statute. On March 31, 1920, Hanna Duggan assigned and transferred what amounted to one-third of her one-fourth interest in the trust fund to others. The transfer was absolute. This point must be decided in favor of the petitioner upon the authority of *Shukert* v. *Allen, supra.* There was a possibility that she might be revested with that of which she had been divested. But a possibility of reversion does not change the nature or fact of the transfer. *Dexter* v. *Jackson*, 243 Mass. 523; 137 N. E. 877. On the death of Hanna Duggan the interest in the trust fund theretofore enjoyed by Hanna Duggan and Hulda Duggan passed to others, but they did not pass from the decedent. The respondent was in error in including in the value of the gross estate any amount for the value of the interest in the trust fund enjoyed by Henry Duggan and Hulda Duggan up to the date of the decedent's death.

There remains to be considered the retroactive operation of the statute upon the transfers made. The trust agreement was entered into December 31, 1919. The Revenue Act of 1918 was then in effect.

The applicable statute is the Act of 1921, an intervening statute which came in between the date of the transfer of the property, and the date of decedent's death. The language of both Acts in points material to this issue was identical. The rates of tax only were changed.

It is settled that mere retroactivity of a taxing statute does not invalidate a tax. *Kentucky Union Co.* v. *Kentucky*, 219 U. S. 140; *League* v. *Texas*, 184 U. S. 156. The tax is an excise on the passing of an interest in property from a decedent. There appears to be no ·question but that such a tax is valid. It was the intention of Congress to make not only the Estate Tax Act of 1921 but also that of 1918 to apply to transfers of property made before the effective dates of the taxing acts where such transfers were in contemplation of death or where the transfer was of an interest in property with respect to which a trust was created to take effect in possession or enjoyment at or after death. *Shwab* v. *Doyle*, 258 U. S. 529.

On behalf of the petitioner it is exhaustively argued that the particular provision of the statute here in question (section 402(c) of the Revenue Act of 1921) must be construed with reference to the tax imposed and can not be construed in the same way as the similar provisions contained in some state inheritance tax statutes which specifically impose transfer taxes on transfers other than transfers of the estate of a decedent and base the tax on the value of the property actually transferred at the time of the transfer. If this assignment may be said to contain any specific contention it seems to be this—that the Federal statute may not borrow support from the generally accepted validity of corresponding state statutes, since, actually, the state tax is on the value of the property transferred as at the date of transfer while the Federal tax is on the value of the property transferred as at the time of transferor's death. Reserving a certain doubtfulness as to the relevancy of the argument, we do not see that much is to be gained by the comparison. In the case of *Keeney* v. *New York*, 222 U. S. 525, where the validity of such a state statute was upheld, Mr. Justice Lamar, speaking for the court, said:

Wherever the amount of a tax is, as here, to be measured by the value of property, it has been earnestly argued that it was to tax the property itself, and that to ignore that feature is to put the name above the fact. But when the State decides to impose such a tax the amount must be determined by some standard. To require the same amount to be paid on all transfers is not so fair as to impose the burden in proportion to the value of the property. An excise on transfers therefore does not lose that character because the amount to be paid is determined by the values conveyed. * * *

\* \* \* \* \* \* \*

The fact that the assessment and payment were postponed until the death of the grantor would be a benefit to the remainderman in the many instances

in which values decreased. But where the power to tax exists, it is for the State to fix the rate and to say when and how the amount shall be ascertained and paid. The fact that the liability was imposed when the transfer was made in 1903, and that payment was not required until the death of the grantor in 1907, does not present any Federal question.

This reasoning is applicable in dealing with the Federal statute. The tax is still an "excise on transfers" measured not by the "values conveyed" but by the values at the time of conveyor's death of the property conveyed. If the value is greater the tax is greater and on the other hand if the value has decreased so has the tax.

In the case of *Frick* v. *Pennsylvania*, 268 U. S. 473, the court in discussing the relation between the state transfer tax and the Federal estate tax said—

While the federal tax is called an estate tax and the state tax is called a transfer tax, both are imposed as excises on the transfer of property from a decedent and both take effect at the instant of transfer. Thus both are laid on the same subject, and neither has priority in time over the other. Subject to exceptions not material here, the power of taxation granted to the United States does not curtail or interfere with the taxing power of the several States. This power in the two governments is generally so far concurrent as to render it admissible for both, each under its own laws and for its own purposes, to tax the same subject at the same time.

The petitioner points out that the New York statute imposes the tax upon all transfers intended to take effect in possession or enjoyment at or after death, "when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof by any such transfer," while the Federal statute imposes the tax primarily upon the transfer of the decedent's estate. This argument then leads to the question already raised, namely, whether the Federal statute may be said to include any more than the actual property of the estate at the time of decedent's death. In view of the difference between the Federal and the state statutes already pointed out and the different angles from which the respective statutes must be considered with respect to constitutional validity, and in further view of the many Federal court decisions to which we have recourse, involving the particular statute, we do not feel that consideration of the state court decisions should be urged.

It is then argued by the petitioner that full effect is given to the Federal statute if it is held to apply to gifts *causa mortis* and that such a construction avoids not only serious inconsistencies in the statute but serious constitutional questions as well. The petitioner defines a transfer *causa mortis* as a transfer which is *intended* to take effect upon the transferor's death and contends that there was in fact no *intent* here on the part of any of the parties to the trust agreement with respect to the order of their deaths and that the decedent could not have intended to die before all of the older parties

to the agreement. We think that the argument is misleading and of no consequence. The Commissioner does not claim that it was the primary intention of the decedent that the trust created should take effect at or after death but that she did create a trust which was intended to take effect in possession or enjoyment at or after death and that she retained an interest in the trust up to the date of her death and that her interest in the trust fund ceased on the date of death. In our opinion the value of the interest that ceased was properly included in the gross estate. But the value of that interest was one-sixth of the value of the trust property at date of death and not one-fourth.

> *Judgment will be entered on 15 days' notice, under Rule 50.*