OPINION OF THE COURT
William F. O’Brien, III, J.
In this action pursuant to article 15 of the RPAPL to compel the determination of claims to real property, plaintiff, Otis Marshall Farms, Inc., presently seeks summary judgment on the first cause of action in its complaint. The cause of action states that an agreement created in November of 1960 between defendant, Snyder Construction Co., and Curtis and Wava Roher allowing defendant to take gravel from a parcel of land owned at the time by the Rohers and subsequently transferred to plaintiff, subject to said agreement, violates EPTL 9-1.1 (a), which is the codification of the common-law Rule against Perpetuities. Defendant contends that its interest in plaintiff’s land does not fall within the purview of EPTL 9-1.1 (a) and that the agreement should remain undisturbed.
Statement of Facts
Defendant obtained by deeded grant dated November 1, 1960, an exclusive right to “take, dig and remove gravel, topsoil and earth” from a parcel of land owned by Curtis and Wava Roher. The terms stated in the deed required defendant to make biannual payments of $500 to the Rohers and specified that the lease terms would continue so long as defendant was able to mine quantities of gravel sufficient to satisfy either New York State standards or defendant’s specifications.
On June 25, 1980, the Rohers deeded their interest in the entire farm to plaintiff. The deed expressly provided that the sale was subject to defendant’s right to take gravel from the portion of the farm’s land lying west of the main bam and also reserved a life use for the Rohers of a dwelling house on the property.
Since the transfer of the property from the Rohers to plaintiff, the parties have coexisted in relative peace. Defendants have made payments to plaintiff under the terms of the *786 deeded interest, which payments were accepted by plaintiff. The present conflict appears to have developed from disputes over who may take gravel from what land on the farm, since both parties are engaged, to some degree, in the excavation business.*
Relevant Law/Analysis
In order to obtain summary judgment, it is necessary that the movant establish a cause of action or defense “sufficient[ ] to warrant the court as a matter of law in directing judgment” in its favor. (CPLR 3212 [b].) The initial burden is on the movant to demonstrate the absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068 [1979].) If the movant meets his burden, it becomes incumbent upon the nonmoving party to produce proof, in admissible form, that establishes the existence of triable facts. (Id.) It is significant to note that, in determining the relative success of the parties in meeting these burdens, plaintiff is entitled to have all proof read in the light most favorable to him and to have the benefit of reasonable inferences to be drawn from the proof. (See, e.g., McGill v Bohack Corp., 69 AD2d 853 [2d Dept 1979].)
The analysis of this case must be undertaken in a different fashion than most because the question of the greatest significance involves a determination of the applicability of a legal principle, which is entirely the province of the court. A review of the record shows plainly that the parties are in agreement regarding the facts of this matter. Defendant’s assertion that the determination of the applicability of EPTL 9-1.1 (a) (2) is a question of fact is not accurate, since the question itself requires a judgment as to the law of the case. (Omath Holding Co. v City of New York, 149 AD2d 179 [1st Dept 1989].) Therefore, since there is no question of fact present, plaintiff will be entitled to summary judgment if it is determined that the interest granted to defendant by the 1960 agreement with the Rohers is subject to provisions of EPTL 9-1.1 (a) (2) and that the interest violates the restrictions set forth therein.
*787 The Nature of Defendant’s Interest in the Land
In order to determine whether defendant’s right to take gravel from plaintiffs property violates either statutory or common-law restrictions on interests in perpetuity, the exact nature of defendant’s interest in the property at issue must first be established. Both parties initially referred to the agreement between defendant and the Rohers as a lease, based upon the agreement’s continuing nature and defendant’s remittance of payment for the use of the Rohers’ property. Defendant later argued, over the objection of plaintiffs counsel, that defendant actually holds a license to take gravel from the property and that because a license is not actually an estate in land, it is not an interest subject to the restrictions of the Rule against Perpetuities.
The interest granted to defendant by Roher to the Snyder deed is most accurately characterized as a profit a prendre, or simply a profit. A profit is a right exercised by one person to take the benefits from the soil of another person, whether by cultivation of the soil or extraction of the soil itself and its contents. (Saratoga State Waters Corp. v Pratt, 227 NY 429 [1920].) A profit is in the same nature as an easement but is distinguished by the fact that a profit may exist independently, without connection or appurtenance to other property, while an easement generally requires the existence of a dominant estate and a servient estate. (Mathews Slate Co. v Advance Indus. Supply Co., 185 App Div 74 [3d Dept 1918].) Further differentiating the two is that while an easement may be created by a parol agreement, a profit must be created by a grant in writing since the right conveyed by the profit constitutes the sale of an interest in land. (Longo v Shaker Hgts. Dev., 11 Misc 2d 278 [Sup Ct, Albany County 1958], appeal dismissed 10 AD2d 784 [3d Dept l960].) Thus, an important difference between an easement and a profit is that the beneficiary of a profit holds an interest in the land which may be assigned or inherited while an easement is personal and may only be conveyed with its appurtenant estate. (Saratoga State Waters Corp. v Pratt, supra at 443-445.)
In contrast to either an easement or a profit, a license is simply the authority to enter the land of another and perform a specified act or series of acts without obtaining any permanent interest in the land. (Todd v Krolick, 96 AD2d 695, 696 [3d Dept 1983] [dissenting mem], citing Borough Bill Posting Co. v Levy, 144 App Div 784 [2d Dept 1911].) An important difference between a license and an easement or profit is that a *788 license may be canceled or withdrawn at the option of the licensor. (Schusterman v C & F Caterers, 192 Misc 564 [City Ct, Bronx County 1948].)
Here, defendant holds a right to enter a specified parcel of land to take gravel as granted by written instrument. The agreement does not allow the grantor, which position would currently be occupied by plaintiff since it took title to the land in question subject to the agreement, to unilaterally revoke defendant’s right to take gravel. If such a right were present, this case would likely not be before the court now. Further, the value intrinsic to defendant’s gravel rights supports a finding that these rights constitute an estate in land. Viewed together with the fact that defendant’s interest was created by a written grant, these circumstances compel the conclusion that the agreement made between defendant and the Rohers is a profit and that defendants subsequently own an interest in the parcel described in the grant.
Applicability of the Rule against Perpetuities to Defendant’s Interest
Having established the nature of defendant’s right to take gravel from a parcel of plaintiff’s property, it must now be determined whether defendant’s interest is subject to scrutiny under EPTL 9-1.1 (a) (2) as asserted by plaintiff.
The common-law Rule against Perpetuities evolved from judicial efforts to limit control of the disposition of real property by the dead hand of landowners reaching into future generations (Symphony Space v Pergola Props., 88 NY2d 466, 475 [1996]). The guiding principle behind these rules that restrict a grantor’s ability to control the future ownership of property is that it is socially undesirable for property to be inalienable for an unreasonable period of time. (Id.) The rules are intended “to ensure the productive use and development of property” and allow the property to remain unfettered by unknown or embarrassing impediments to alienability. (Id. [internal quotation marks omitted], citing Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 161 [1986].)
The traditional statement of the common-law Rule against Perpetuities is that “[n]o interest [in property] is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.” (Symphony Space v Pergola Props., at 475 [internal quotation marks omitted], citing Gray, Rule Against Perpetuities § 201, at 191 [4th ed 1942].) This common-law rule is now embodied in EPTL 9-1.1, of which subdivision (a) sets forth the suspension of alienation *789 rule, which plaintiff asserts is violated by defendant’s right to take gravel from plaintiffs property for an allegedly indeterminable amount of time. The statutory rule sets forth, in relevant part, that:
“Every present or future estate shall be void in its creation which shall suspend the absolute power of alienation by any limitation or condition for a longer period than lives in being at the creation of the estate and a term of not more than twenty-one years.” (EPTL 9-1.1 [a] [2].)
The question of whether the restrictions of the Rule against Perpetuities should apply to an interest characterized as a profit appears to one of first impression in New York jurisprudence. Historically, the prohibitions of the Rule against Perpetuities were developed in the context of transfers for the lives of people, so the applicability of the Rule to transfers such as the one at issue here, dealing with corporate entities which may exist beyond the lives of the principals who operate them, has developed on a case-by-case basis. The Rule has been found to apply to a purchase option granted to a party who had otherwise no connection to the affected parcel of real property. (Buffalo Seminary v McCarthy, 86 AD2d 435 [4th Dept 1982], affd in part on opn below 58 NY2d 867 [1982].) A grant of a preemptive right to purchase real property in a commercial setting was held to be excepted from the Rule against Perpetuities. (Metropolitan Transp. Auth. v Bruken Realty Corp., supra at 168.) This exception was based largely upon the Court of Appeals’ view that the utility that such instruments have in modern real estate transactions outweighs the social ill that the Rule seeks to prevent. (Id. at 165-166.) Under this reasoning, the Court later determined that grants of preemptive right between private parties that extend beyond the period set forth in the Rule do not enjoy such an exemption and are subject to the Rule’s prohibitions. (Morrison v Piper, 77 NY2d 165 [1990].) In its most recent opportunity to address this area of law in Symphony Space v Pergola Props. (supra), the Court of Appeals declined to exempt all commercial option agreements from the Rule against Perpetuities, although that holding is of limited value here since the interest in that case was found to have violated the future interests provisions of EPTL 9-1.1 (b) which are not at issue here.
The common threads of the analyses in the aforementioned cases and others addressing the topic are an evaluation of the nature and social utility of the interests in question and *790 the reasonableness of the restriction such interests placed upon the alienation of property. (See Rebh v Lake George Ventures, 218 AD2d 829, 831 [3d Dept 1995].) As a general observation which applies closely to the case at hand, there is great social utility in the granting of profits, whether for the removal of gravel or timber or for agricultural purposes. Here, at the time of the grant, defendant obtained a right to dig topsoil and gravel from approximately 30 acres of otherwise unused farmland. The nature of defendant’s interest is a continuing right to take such materials from the land so long as the activity is commercially practicable, which serves the purpose of promoting the use of the property for the extraction of construction materials.
Further supporting a finding that the Rule against Perpetuities should not apply in this case is a notation from the English Law of Property Act of 1925, which stated that the Rule does not apply to the grant of an easement or right in land regarding working mines and felling timber. (10 Warren’s Weed, New York Real Property, Perpetuities and Accumulations, § 3.06 [4th ed].) While this declaration has no precedential value here, it provides an indication that an interest such as the present one which confers a right to take profits in the land of another was not intended to be restricted by the Rule.
The foregoing analysis compels the conclusion that the Rule against Perpetuities does not apply to interests in land that grant the right to take profit from the land. Defendant’s agreement to take gravel from plaintiff’s land is likewise not affected by the Rule’s restrictions.
Even if defendant’s interest were found to be subject to the restrictions of EPTL 9-1.1 (a) (2), the interest does not impose an absolute restraint on alienation of the property, as evidenced by plaintiffs acquisition of title to the land some 20 years after defendant obtained the right to take gravel from it. The record is clear that plaintiff was fully aware of defendant’s interest in the property at the time it took title from the Rohers. The nature of that transaction notwithstanding, defendant’s interest did not impede the transfer from the Rohers to plaintiff and, hence, the interest here did not violate the statute.
Accordingly, plaintiffs motion for summary judgment is denied and defendant is granted summary judgment dismissing plaintiffs cause of action of a violation of EPTL 9-1.1.

 No proof in admissible form has been presented to establish the precise reason why, after 20 years of coexistence, plaintiff has now chosen to litigate the present matter. However, the explanation included in the statement of fact is gleaned from the record and is intended to place the matter in its proper context. This statement has, however, no evidentiary value. (See Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].)